[Nos. 29508-3-II; 31028-7-II. Division Two. January 11, 2005.]

THE STATE OF WASHINGTON, *Respondent,* v. JONATHAN J. JENSEN, *Appellant.*

*In the Matter of the Personal Restraint of* JONATHAN J. JENSEN, *Petitioner.*

320

*Robert M. Quillian,* for appellant/petitioner.

*Edward G. Holm, Prosecuting Attorney,* and *Steven C. Sherman, Deputy,* for respondent.

¶1 ARMSTRONG, J. — Jonathan Jensen appeals his convictions for three counts of first degree child molestation and one count of indecent exposure, arguing that the evidence was insufficient to support his convictions. He also argues that his counsel was ineffective and had a conflict of interest that adversely affected his performance because his counsel also faced pending child molestation charges. We reverse and dismiss with prejudice one of the child molestation counts for insufficient evidence and hold, as to the other counts, that Jensen is entitled to a hearing to determine if his attorney's pending charges created a conflict of interest that affected counsel's ability to represent him.

## FACTS

¶2 In August 2002, the State charged Jonathan Jensen with four counts of first degree child molestation and two counts of indecent exposure. The information alleged that Jensen molested and exposed himself to his foster granddaughter, A.S. (birthdate May 21, 1991), between August 1, 2001 and February 19, 2002.

¶3 A.S. had lived with Jensen and his wife since she was five years old. She considered the Jensens her grandparents.

¶4 A.S.'s relationship with Jensen changed during the summer of 2001 when he became more aggressive with her, her half-brothers, and sister. According to A.S., Jensen removed his pants and underwear while she was washing dishes in the kitchen. When he called to her, A.S. saw Jensen's "private part" in a mirror. Report of Proceedings (RP) (Sept. 17, 2002) at 19-20. Jensen exposed himself to

her three other times, but A.S. could not remember where the incidents occurred.

¶5 A.S. also testified that Jensen touched her "private part and on my breast." RP (Sept. 17, 2002) at 21. One night Jensen entered her room while she was "dozing off" and touched her "private spot" between her legs. RP (Sept. 17, 2002) at 21-23. She remembered two other times Jensen came into her room at night, but she did not testify to any sexual contact during these instances. When the deputy prosecutor asked about her earlier statement that Jensen had touched her breasts, A.S. responded that one day when she was home sick, Jensen came into her bedroom and started tickling her; he put his hand under her shirt and touched her breast. In February 2002, A.S. told three friends, R., M., and J., what Jensen had done. R. and M. testified at trial.

¶6 Detective Cheryl Stines of the Thurston County Sheriff's Office investigated the case against Jensen. During cross-examination, Jensen's attorney asked Stines, "[i]n the course of your investigation, you came across one incident of touching by [Jensen]?" Stines replied, "[y]es. One clear incident." RP (Sept. 17, 2002) at 67. On redirect, Stines testified that she had asked A.S. whether Jensen had touched her private area more than once and that A.S. had told her this happened "[a] few times." RP (Sept. 17, 2002) at 75.

¶7 The jury convicted Jensen on three of the molestation counts and one of the indecent exposure counts. Jensen filed his direct appeal in October 2002 and a personal restraint petition a year later.

¶8 Jensen's personal restraint petition alleges that after his conviction, he learned that the State had charged his attorney, S. Don Phelps, with two counts of third degree child molestation. On October 22, 2002, after Jensen's trial, the deputy prosecutor filed a witness list in Phelps's case that included Stines, the investigator in Jensen's case. James Dixon, Phelps's attorney, averred in a sworn declaration that the State began investigating Phelps in April

2002, and continued until his trial in November. According to Dixon, Stines was the lead investigator in Phelps's case.

¶9 Robert Quillian, Jensen's appellate counsel, averred that both the trial judge, Daniel J. Berschauer, and the deputy prosecutor, Jodilyn Erikson-Muldrew, who tried Jensen's case, knew of Phelps's charges before Jensen's trial. Erikson-Muldrew was one of the deputy prosecutors in Thurston County's Special Assault Unit, which handles sex crimes against children. And this unit would have received the initial investigative report concerning Phelps. That Jensen had not been advised of Phelps's charges came up at a March 14, 2003 hearing before Judge Berschauer. Judge Berschauer explained that he knew of the charges at the time of Phelps's trial, but he had assumed Jensen also knew about the charges.

¶10 Professor John Strait, of the Seattle University School of Law, submitted an affidavit in support of Jensen's personal restraint petition. Strait opines that (1) Phelps had a mandatory duty to disclose his pending criminal prosecution to Jensen, (2) the trial court should have notified Jensen and removed Phelps, and (3) Erikson-Muldrew had an obligation to inform the court and Jensen.

## ANALYSIS

### I. Sufficiency of the Evidence

¶11 Jensen argues that the evidence is insufficient on all counts because the State failed to prove they occurred within the charging period.

¶12 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and

direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

¶13 The charging period, "on or about August 1, 2001 through February 19, 2002," was included in the to-convict instructions, and neither party objected. Clerk's Papers at 2-3. If neither party objects to an instruction, it becomes the "law of the case." *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). And the State assumes the burden of proving otherwise unnecessary elements if they are included in the "to convict" instruction. *Hickman*, 135 Wn.2d at 102. The defendant may challenge the sufficiency of the evidence supporting added but unnecessary elements. *Hickman*, 135 Wn.2d at 102.

¶14 Citing *State v. Hayes*, 81 Wn. App. 425, 432, 914 P.2d 788 (1996), the State contends that if time is not a material element of the charged crime, the language "on or about" is sufficient to admit proof of the act at any time within the statute of limitations, provided there is no alibi defense. But *Hayes* involved evidence of a child rape that occurred shortly after the charging period. *See Hayes*, 81 Wn. App. at 432. Here, in contrast, Jensen's argument implies that the alleged incidents may have occurred before the charging period. And in *Hayes*, Division One declined to decide whether evidence of another rape two years before the charging period could be used to sustain one of the counts. *Hayes*, 81 Wn. App. at 434-35. Nonetheless, we reject Jensen's argument.

¶15 During A.S.'s testimony about Jensen's change in behavior during the summer of 2001, Erikson-Muldrew asked what he had done to her. She testified "[Jensen] touched me in places that," and then began by discussing the indecent exposure involving the mirror. RP (Sept. 17, 2002) at 17-19. A.S. then described the two incidents in which Jensen touched her between her legs and on her breast. Thus, she testified to the incidents after establishing that her relationship with Jenson changed during the summer of 2001. The jury could have reasonably found that

these incidents occurred within the charging period in the to-convict instructions.

¶16 Jensen also argues that, even if the State proved that the indecent exposure count and the child molestation count involving touching in the bed occurred within the information's time frame, it did not prove two other child molestation incidents.

¶17 A person commits first degree child molestation if the person has sexual contact with another who is less than 12 years old and not married to the perpetrator and the perpetrator is at least 36 months older than the victim. RCW 9A.44.083.

¶18 A.S. testified to one incident in which Jensen entered her room at night and touched her in her "private spot" between her legs. RP (Sept. 17, 2002) at 21-23. According to A.S., Jensen also entered her room at night two other times; but A.S. did not testify to sexual contact during these visits. A.S. also testified directly about the incident in which Jensen came into her room while she was reading in bed, began tickling her, put his hand under her shirt, and touched her breast. Stines testified that A.S. said Jensen touched her private area "[a] few times." RP (Sept. 17, 2002) at 75. Although this evidence supports two counts of first degree child molestation, the question remains whether it supports a third count.

¶19 In cases involving a resident child molester, the alleged victim's generic testimony can be used to support multiple counts. *Hayes*, 81 Wn. App. at 438. At a minimum, the alleged victim must be able to describe (1) the kind of act or acts with sufficient specificity for the jury to determine which offense, if any, has been committed; (2) the number of acts committed with sufficient certainty to support each count alleged by the prosecution; and (3) the general time period in which the acts occurred. *Hayes*, 81 Wn. App. at 438.

¶20 In *Hayes*, the victim testified that Hayes "put his private part in mine" and described Hayes's specific conduct

during and after the rapes. *Hayes*, 81 Wn. App. at 438. Here, A.S. testified only that Jensen entered her room at night on two other occasions. Although Stines testified that A.S. told her that Jensen touched her private area "[a] few times," she never mentioned that sexual contact took place during the two other times Jensen entered her room at night. RP (Sept. 17, 2002) at 75. Because A.S.'s testimony does not describe the acts with sufficient specificity for the jury to determine which offenses, if any, Jensen committed when he entered her bedroom on the two additional occasions, we must reverse one of Jensen's first degree child molestation convictions. *See Hayes*, 81 Wn. App. at 438.

## II. Ineffective Assistance of Counsel

¶21 Jensen contends that his counsel was constitutionally ineffective for eliciting testimony from Stines that A.S. had described "[o]ne clear incident" of touching because this allowed the State to elicit testimony on redirect that A.S. told Stines that Jensen had touched her private area "[a] few times." RP (Sept. 17, 2002) at 67, 75.

¶22 To show ineffective assistance of counsel, Jensen must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Prejudice occurs if, but for the deficient performance, there is a reasonable probability that the outcome would have been different. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998). We give considerable deference to counsel's performance and our analysis begins with a strong presumption that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because of this presumption, Jensen must demonstrate the absence of legitimate strategic or

tactical reasons for the challenged conduct. *McFarland*, 127 Wn.2d at 336.

¶23 A.S. testified to one incident when Jensen came into her room at night and touched her vaginal area and two other times when Jensen came into her room at night. During cross-examination, Phelps asked Stines, "[i]n the course of your investigation, you came across one incident of touching by the grandfather," to which Stines answered, "Yes. One clear incident." RP (Sept. 17, 2002) at 67. Because the State had charged Jensen with four counts of child molestation, counsel was likely attempting to highlight the weaknesses in the State's charging of four counts. And the jury did acquit Jensen on one child molestation count. Because counsel's question was apparently a tactical choice, we reject Jensen's claim that counsel was ineffective.

### III. Conflict of Interest

¶24 In his personal restraint petition, Jensen argues that counsel was constitutionally ineffective because Phelps's pending child molestation charges created a conflict of interest. Jensen seeks a new trial or, in the alternative, an evidentiary hearing on whether the conflict adversely affected Phelps's performance.

¶25 Jensen may raise a new constitutional issue in his personal restraint petition if he can prove the claimed error actually and substantially prejudiced him. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994). If a petitioner raises a constitutional issue, we have three options: (1) if the petitioner fails to meet his threshold burden of showing actual prejudice stemming from the constitutional error, we dismiss the petition; (2) if the petitioner makes a prima facie showing of actual prejudice, but we cannot determine the merits of the contention solely on the record, we remand for a hearing on the merits or for a reference hearing; or (3) if we are convinced the petitioner has proved the error actually prejudiced him, we grant the

petition. *In re Pers. Restraint of Rice,* 118 Wn.2d 876, 885, 828 P.2d 1086 (1992) (citing *Hews v. Evans,* 99 Wn.2d 80, 88, 660 P.2d 263 (1983)).

¶26 Jensen claims that he would have discharged Phelps had he known of Phelps's pending charges. Under Washington's Rule of Professional Conduct (RPC) 1.7(b), "[a] lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests" unless the lawyer reasonably believes the representation will not be adversely affected and the client consents in writing after consultation and full disclosure of the material facts. By failing to disclose his pending charges, Phelps violated RPC 1.7(b). But this rule "does not embody the constitutional standard for effective assistance of counsel on appeal." *State v. White,* 80 Wn. App. 406, 412-13, 907 P.2d 310 (1995).

¶27 The Sixth Amendment right to counsel includes the right to conflict-free counsel. *State v. Davis,* 141 Wn.2d 798, 860, 10 P.3d 977 (2000) (citing *Wood v. Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 1103, 67 L. Ed. 2d 220 (1981)). To establish a Sixth Amendment violation, a defendant who did not object at trial must demonstrate that an actual conflict of interest adversely affected his attorney's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). Prejudice is presumed if the defendant makes this showing. *Sullivan,* 446 U.S. at 349-50. A trial court must inquire if it knows or reasonably should know that a particular conflict exists. *Sullivan,* 446 U.S. at 346. But even if the trial court fails to inquire, the defendant must still establish that the conflict of interest adversely affected his counsel's performance. *Mickens v. Taylor,* 535 U.S. 162, 173-74, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002).

¶28 An analysis of "actual conflict as something separate and apart from adverse effect" is not required. *Mickens,* 535 U.S. at 172 n.5; *State v. Dhaliwal,* 150 Wn.2d 559, 571, 79 P.3d 432 (2003). In the Sixth Amendment context, an actual conflict is defined in part as a conflict

that adversely affects counsel's performance. *Mickens*, 535 U.S. at 172 n.5; *Dhaliwal*, 150 Wn.2d at 571. Thus, "a defendant asserting a conflict of interest on the part of his or her counsel need show only that a conflict adversely affected the attorney's performance to show a violation of his or her Sixth Amendment right." *Dhaliwal*, 150 Wn.2d at 571.

¶29 Jensen argues that Phelps's conflict adversely affected both his pretrial preparation and trial performance. But he does not identify a specific example of how Phelps's conflict affected his trial performance; nor can we find one in the record. For example, although Stines was the investigator in Phelps's case, he cross-examined her on the arguably leading questions she asked A.S. during an interview and got her to concede that she came across only "[o]ne clear incident" of sexual touching during her investigation. RP (Sept. 17, 2002) at 67.

¶30 In *Dhaliwal*, the defendant argued that his attorney had an actual conflict of interest that adversely affected his performance because the attorney had represented witnesses for both sides in other matters. *Dhaliwal*, 150 Wn.2d at 566. The attorney had represented Grewal, one of the State's witnesses, in a prior assault case relevant to Dhaliwal's case and some of both sides' witnesses in a shareholder action against their employer. Dhaliwal claimed that his attorney's performance was flawed because he was unable to effectively cross-examine Grewal. The court rejected this argument because the attorney's co-counsel questioned the witness about the prior assault during an extensive cross-examination. *Dhaliwal*, 150 Wn.2d at 571-72. Similarly, Jensen cannot show that Phelps's conflict affected his cross-examination of Stines.

¶31 Further, although the court found that Dhaliwal had shown a possibility that his attorney represented conflicting interests, it declined to order a new trial or remand for an inquiry into the nature and effects of the conflicts because Dhaliwal had not shown how the conflicts affected his attorney's trial performance and because it found insuf-

ficient evidence to justify remand. *Dhaliwal*, 150 Wn.2d at 573. But as the *Dhaliwal* court noted, in *Wood*, 450 U.S. at 273-74, the Supreme Court ordered a remand so the trial court could determine whether a conflict of interest strongly suggested by the record was an actual conflict at trial.

¶32 In *Wood*, three employees of an adult theater and bookstore were convicted of distributing obscene materials. *Wood*, 450 U.S. at 263. The court ordered the employees to pay $5,000 or $10,000 fines and placed them on probation. The employer had paid the employees' fines in the past, and had paid for their lawyer in the current matter, but had not paid the current fines. *Wood*, 450 U.S. at 266-67. The employees' case reached the Supreme Court on the issue of whether a probationer's imprisonment solely for his inability to pay a fine violated equal protection. *Wood*, 450 U.S. at 264. But because the record demonstrated the possibility that the attorney and the employer sought to create a test case, the Court remanded for "a hearing to determine whether the conflict of interest that this record strongly suggests actually existed." *Wood*, 450 U.S. at 273. *Wood* applies by analogy here, and our personal restraint petition process provides the appropriate method to determine whether Phelps had a conflict of interest that adversely affected his representation of Jensen.

¶33 To obtain a hearing, Jensen must demonstrate that he has competent, admissible evidence to establish facts that would entitle him to relief. *Lord*, 123 Wn.2d at 303 (citing *Rice*, 118 Wn.2d at 886). He must state particular facts, which, if proved, would entitle him to relief. *Rice*, 118 Wn.2d at 886. And Jensen's alleged facts must amount to more than speculation, conjecture, or inadmissible hearsay. *Rice*, 118 Wn.2d at 886. If Jensen makes this threshold showing, we will consider the State's response. *Rice*, 118 Wn.2d at 886.

¶34 The State accepts the timelines in Jensen's petition that set forth the factual background for the claimed conflict, and Jensen has produced numerous affidavits and other documents that support these facts. In his

affidavit, Jensen avers that Phelps's pending charges adversely affected his representation in numerous ways. Specifically, Jensen claims that: (1) Phelps had short, infrequent contacts with him; (2) they discussed his case only the weekend before trial; (2) Phelps failed to check A.S.'s school records to determine if she was absent or distressed during the time the molestation occurred; (3) Phelps failed to speak with A.S.'s friends or locate and interview A.S.'s half-brother, D.; (4) Phelps failed to call Jensen's wife as a witness; and (5) Phelps did not inspect the physical layout of Jensen's home to verify whether A.S.'s story was even possible. Jensen also claims that immediately after the jury verdicts, Phelps "apologized for his performance in trial, and admitted that he had not properly and adequately prepared for [Jensen's] trial." Personal Restraint Petition (PRP) at App. I. Jensen provides no statements from the possibly favorable witnesses. Thus, we cannot say on this record that he was prejudiced as we ordinarily measure it—the result would likely have differed absent the conflict. But because this is Jensen's first opportunity for judicial review, we need not apply the heightened threshold requirements usually applicable to personal restraint petitions. *See In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 299, 88 P.3d 390 (2004).

¶35 Strait explains the ways Phelps's conflict adversely affected his representation: (1) he was likely to be distracted by his own pending charges; (2) he was "unlikely to be able to devote the same skill, talent, analysis, and independent judgment" as an unencumbered lawyer; (3) he might have sought to curry favor with the police or prosecution; (4) he would be unable to adequately represent the defendant in plea bargaining; and (5) he could not effectively cross-examine police witnesses. PRP App. J 9-10. Strait concludes that "[t]here is a substantial likelihood that Mr. Phelps could not bring the independent judgment, aggressive advocacy and adequate preparation" to Jensen's defense. PRP at App. J.

¶36 We hold that the record supports Jensen's assertions sufficiently to warrant a hearing on whether Phelps was

adequately prepared and, if not, whether the lack of preparation was due to his own pending charges. Particularly telling are Judge Berschauer's statements at a September 13, 2002 continuance hearing. Phelps moved for a continuance because: (1) he had not completed an interview of A.S. until less than a month before the hearing because of the State's scheduling requirements; (2) after completing the interview, he learned of inconsistent statements by A.S. and wished to interview her half-sister L. and her half-brother D. in anticipation of having them testify regarding the statements; and (3) the State's decision to charge two more counts of child molestation in the second amended information.

¶37 In denying the motion, Judge Berschauer said:

> Let me be clear in my ruling though. I said it's not a close case. It isn't but I want to make sure Mr. Phelps understands my position. There was an initial interview of the complaining witness. I'm sure what he says was known to the interviewer at that time, that there probably were inconsistent statements.
>
> The interview wasn't completely completed until approximately one month ago, a little less but approximately one month ago. At that time those inconsistent statements were known. Then it is incumbent upon defense counsel to proceed with all due dispatch to subpoena witnesses to have their presence required and to conduct interviews.
>
> Nothing apparently was done.
>
> Attempts were perhaps made, but nothing was done. And then on the eve of the trial, then I get information from an assistant of Mr. Phelps there is a motion to continue this trial on the day of the trial. That is not satisfactory. That is not appropriate.
>
> . . . .
>
> [A]t some point, when all these delays are taking place counsel have got to pursue the case, pursue witnesses, subpoena witnesses, all these things have to be done.
>
> . . . .
>
> [T]here are times when courts simply have to say to attorneys look, you've had all this time, you must be diligent, you

must proceed, and on this record, with the fact that one of the witnesses [L.] is not even at a place where she could be located.

To grant a continuance I think would be a miscarriage of justice. So the motion to continue is denied.

RP (Sept. 13, 2002) at 15-18.

¶38 Accordingly, we reverse and dismiss with prejudice one of the child molestation counts for insufficient evidence and we remand for a hearing on the merits to determine whether Phelps had an actual conflict of interest that adversely affected his representation of Jensen. RAP 16.12. If the trial court determines that such a conflict existed, it should grant the petition and order a new trial. If no such conflict existed, it should affirm Jensen's remaining convictions. The trial court's order deciding Jensen's petition is subject to appellate review under RAP 16.14(b).

HOUGHTON and BRIDGEWATER, JJ., concur.

Review denied at 154 Wn.2d 1011 (2005).