# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71822-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ERIC STEVEN SCHNEIDER, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 25, 2016 |
| | ) | |

LEACH, J. — Eric Schneider appeals his convictions on two counts of second degree rape of a child, one count of third degree rape of a child, and one count of first degree incest. Primarily, he challenges the sufficiency of the evidence to support multiple convictions and two trial court decisions about admitting evidence: (1) the admission of ER 404(b) evidence to show a common scheme or plan and (2) the exclusion of evidence of the victim's report of a rape by a third party. The record sufficiently supports each conviction and each challenged evidence decision. But because the trial court did not make an individualized inquiry into Schneider's ability to pay costs, we reverse that part of his sentence imposing costs and remand for further proceedings consistent with this opinion.

No. 71822-3-I / 2

FACTS

Substantive Facts

J.S. was born March 1, 1995, to Elizabeth.[1] In December 2005, Elizabeth married Eric Schneider. Schneider often took care of J.S. and her two siblings while Elizabeth worked nights.

J.S. reported the following facts in police interviews and trial testimony. Schneider began sexually abusing J.S. after he married her mother. The first incident occurred while Schneider and the three children were driving at night to pick up Elizabeth. After Schneider stopped the car near the woods, he told the boys to get out and play. He then took J.S. onto his lap and attempted to penetrate her vaginally. When she told him that hurt too much, he penetrated her anally instead. Later, again in a vehicle, Schneider raped J.S. vaginally for the first time after taking her to a father-daughter dance.

J.S. could recall only these occurrences in detail; "[t]he rest of the times, they just blended in." She testified that the rapes occurred once per week in the beginning and increased to three to four times per week when she was 14 and 15. Schneider and J.S. had oral sex. Schneider penetrated J.S. using sex toys. At other times, he penetrated her with a handgun. He asked J.S. to wear her

---

[1] To protect the anonymity of abuse victims, we use first names for their adult relatives.

-2-

mother's lingerie and high-heeled shoes. He showed her pornography and asked her to imitate what it showed.

Schneider and J.S. often had sex in vehicles, but Schneider also took her to empty houses under construction and to motel rooms. Schneider also had sex with J.S. in her parents' bedroom and her own bedroom and, less often, in the living room.

J.S. described Schneider as being gentle with her at first but violent as she grew older. He hit her. He put a belt around her throat and held it during sex. He penetrated her with a sex toy in one orifice while he was penetrating her in another. After he raped her in the shower, he urinated on her. Once, he carved his initials on her pubis with a knife, making her bleed. When J.S. told Schneider she wanted to stop having sex, Schneider told her he would kill her if she told anyone about the abuse. Schneider also told J.S. he had been "fixed" so they did not need to use condoms.[2]

J.S. indicated in interviews that Elizabeth's ex-partner, John, molested J.S. when she was five years old. J.S. told Schneider about the abuse. In 2011, Schneider took her to an appointment with Torr Lindberg, a mental health counselor. During the session, J.S. told Lindberg that Schneider had not abused

---

[2] J.S. also reported, accurately, that Schneider is circumcised.

her.[3] J.S. also spoke to Annetta Spicer, formerly Schneider's family law lawyer, as part of a child custody dispute between Schneider and his ex-wife, Jessica. Spicer told J.S. that Jessica's sister, A.S., had alleged Schneider abused her. J.S. told Spicer that Schneider had not abused her.

J.S. told her mother about Schneider's abuse in October 2011. Schneider had last raped her about two weeks earlier, after Schneider and Elizabeth had separated. J.S. reported the rapes during a sexual assault examination with Nurse Joanne Mettler the next week. Nurse Mettler examined J.S. for sexually transmitted diseases, infections, and acute and healed injuries. She found nothing out of the ordinary. She later testified that it is common to find no physical evidence of violent rape when examining victims. Mettler also did not see any sign of scarring in J.S.'s pubic area. Mettler testified that J.S.'s hymen "looks very thick and very wavy and redundant." She further explained that because tissue heals quickly in the vaginal and anal areas, J.S.'s reports of bleeding after intercourse were not inconsistent with her lack of physical signs.

Procedural Facts

The State charged Schneider with two counts of rape of a child in the second degree between June 1, 2007, and February 28, 2009, one count of rape of a child in the third degree between March 1, 2009, and February 28, 2011, and

---

[3] J.S. testified that she did not tell Lindberg about the abuse because Schneider was outside in the car and she was afraid of him.

one count of incest in the first degree between March 1, 2011, and October 15, 2011.

Before trial, the trial court excluded J.S.'s statements to Mettler and Lindberg that John abused her. The court found that those statements' risk of unfair prejudice, confusion, or misleading substantially outweighed their probative value.[4]

The trial court admitted A.S.'s testimony that Schneider raped her when she was a young girl. The trial court found that the alleged rapes of A.S. and J.S. were "markedly similar" and ruled that the State could present evidence of the earlier rapes to show "a general plan, a design to fulfill [Schneider's] sexual compulsions."

A.S.'s sister Jessica, married Eric Schneider when A.S. was between 7 and 9. Schneider and Jessica moved to Spokane when A.S. was about 11. A.S. visited from California in November and December 1999, when Jessica was about to have her third child.[5] A.S. reported that Schneider forcibly raped her twice during that trip.

The first time, as A.S. slept on a couch in the living room, Schneider came to her, lifted the covers, lay on her, pulled down her pants, and had vaginal sex with her. A.S. cried and tried to stop it, but Schneider put his hand over her

---

[4] The court declined to revisit this ruling at trial.
[5] The State conceded this date in its closing.

mouth or throat and held her hand over her head. Schneider told her that if she told anyone, he would hurt Jessica or Jessica's daughters. A.S. also reported that during that trip Schneider raped her in the bedroom he shared with Jessica and in the children's bedroom.

The second time, Schneider asked A.S. to dress in her sister's lingerie and heels, but she refused. When A.S. also refused to have sex, Schneider again forcibly raped her. When Jessica and Schneider separated in April 2000, Jessica moved to Boardman, Oregon. A.S. visited her there. After she arrived, Schneider unexpectedly came and stayed. Schneider raped A.S. multiple times in Oregon, though she remembered only one incident in detail. While the family was riding horses, A.S. got horse manure on herself. Jessica told her to go to the apartment with Schneider. At the apartment, Schneider pushed A.S. down and raped her on the living room floor. A.S. first reported the rapes in 2003. She gave statements to the Riverside police that year and later to police in Oregon.[6] Neither department initiated charges.

A.S. testified she did not know J.S., had never spoken with her, and had not read about J.S.'s allegations against Schneider. A.S. had, however, reviewed legal documents for the case. The State told the jury in its opening

_____

[6] A.S. reported in a 2014 interview that Schneider put his hand around her neck during sex; that Schneider raped her orally and anally, as well as vaginally; that he had videotaped the rape in Schneider and Jessica's bedroom; and that Schneider asked her to wear her sister's underwear.

statement that A.S. and J.S. did not know each other, had never met, and had never spoken to each other.[7]

In his defense, Schneider offered Lindberg's testimony that J.S. told him Schneider had not abused her. He also offered testimony from both Lindberg and Spicer that J.S. had denied Schneider abused her. But the trial court excluded Spicer's testimony that she told J.S. about A.S.'s allegations.[8]

The jury found Schneider guilty on all four counts. The court sentenced Schneider to life in prison with a minimum term of 280 months. The court also imposed $1,487.50 in financial obligations. It later found Schneider indigent and thus entitled to public funds to pay the costs of transcripts for his appeal.

## STANDARD OF REVIEW

To affirm a criminal conviction, this court must find that the record includes sufficient evidence for a reasonable person to find the State has proved every element of the crime beyond a reasonable doubt.[9] We view the evidence in the light most favorable to the State.[10] A party challenging sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences

---

[7] In closing, the State reiterated there was "no evidence that [J.S.] knew anything about [A.S.] or that [A.S.] knew anything about [J.S.]."

[8] The court did not offer its reasons.

[9] State v. Jensen, 125 Wn. App. 319, 325-26, 104 P.3d 717 (2005).

[10] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

from the evidence.[11] We defer to the trier of fact to resolve conflicting testimony, witness credibility, and the persuasiveness of evidence.[12]

This court reviews questions of law de novo, including alleged violations of a defendant's Sixth Amendment rights to present a complete defense and confront witnesses.[13] We also review de novo, as a question of law, the trial court's interpretation of an evidentiary rule.[14] But we review the trial court's decision to admit or exclude evidence for abuse of discretion.[15] Abuse occurs when the trial court makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons.[16]

## ANALYSIS

### Sufficiency of the Evidence To Support Unanimous Verdicts

First, Schneider challenges the sufficiency of the evidence to support a unanimous verdict on all four counts. The State had to prove that Schneider had sexual intercourse with J.S. twice when she was between 12 and 14, that he had intercourse with J.S. when she was between 14 and 16, and that he had intercourse with J.S. between March 1 and October 15, 2011.

---

[11] State v. Edwards, 171 Wn. App. 379, 401, 294 P.3d 708 (2012).
[12] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).
[13] State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).
[14] State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).
[15] Gunderson, 181 Wn.2d at 922.
[16] Gunderson, 181 Wn.2d at 922 (quoting State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

The constitutional right to a jury trial requires that the jury be unanimous as to the specific act the defendant committed for each crime.[17] To protect this right, the State may elect an act to rely on for conviction. Otherwise, the court must instruct the jury "that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt."[18] "In sexual abuse cases where multiple counts are alleged to have occurred within the same charging period, the State need not elect particular acts associated with each count so long as the evidence 'clearly delineate[s] specific and distinct incidents of sexual abuse' during the charging periods."[19] When the State charges identical counts, the trial court must also instruct the jury "that they are to find 'separate and distinct acts' for each count."[20]

Schneider concedes that the trial court gave the required instructions but argues that the State presented insufficient evidence at trial for the jury to convict him unanimously. "Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[17] State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984) holding modified by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988).

[18] Petrich, 101 Wn.2d at 572.

[19] State v. Hayes, 81 Wn. App. 425, 431, 914 P.2d 788 (1996) (alteration in original) (quoting State v. Newman, 63 Wn. App. 841, 851, 822 P.2d 308 (1992)).

[20] Hayes, 81 Wn. App. at 431.

doubt."[21] Due process imposes three requirements to sustain a conviction of a

resident child molester based on generic testimony from an alleged victim:

> First, the alleged victim must describe the kind of act or acts with sufficient specificity to allow the trier of fact to determine what offense, if any, has been committed. Second, the alleged victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution. Third, the alleged victim must be able to describe the general time period in which the acts occurred.[22]

These requirements balance the due process rights of accused resident child

molesters against the risk of immunizing them from prosecution due to the nature

of their crimes.[23]

Victims' undifferentiated accounts of multiple incidents of abuse may fail

this test. In State v. Edwards,[24] Division Two of this court used this test to uphold

a defendant's conviction for one count of child molestation and affirm the trial

court's vacation of his conviction on a second count. After the jury convicted on

two identical counts of child molestation, the trial court found insufficient evidence

existed for juror unanimity on count 2 and vacated that conviction.[25] Division

---

[21] Hayes, 81 Wn. App. at 430.

[22] Hayes, 81 Wn. App. at 438; see People v. Jones, 51 Cal. 3d 294, 315-16, 792 P.2d 643, 270 Cal. Rptr. 611 (1990) (holding that specifics regarding date, time, place, and circumstance are factors regarding credibility, not necessary elements that need to be proved to sustain a conviction).

[23] Hayes, 81 Wn. App. at 438.

[24] 171 Wn. App. 379, 403, 294 P.3d 708 (2012).

[25] Edwards, 171 Wn. App. at 403. Division Two reviewed this decision de novo.

Two decided that (1) based on the victim's undifferentiated accounts of 10-15 incidents, the jurors could not have differentiated between the alleged acts; (2) only the victim's testimony about the first time the defendant abused her was specific enough to allow the jury to find the defendant committed the crime; and (3) apart from the victim's testimony that the first incident occurred when she was five or six, "[t]here was no other evidence defining the time period in which any other act occurred."[26] Because the evidence did not "clearly delineate between specific and distinct incidents . . . during the charging period," the trial court properly vacated count 2.[27]

Similarly, in State v. Jensen,[28] Division Two affirmed two counts of child molestation but reversed a third count. The victim had testified to one incident where the defendant entered her room and "touched her in her 'private spot'" and another where he entered her room "and touched her breast."[29] The victim also testified that the defendant "touched her private area '[a] few times'" and had entered her room at night two other times.[30] The court reversed the defendant's third conviction because the victim did not describe "with sufficient specificity" a third incident of sexual contact.[31]

---

[26] Edwards, 171 Wn. App. at 402-03.
[27] Edwards, 171 Wn. App. at 403.
[28] 125 Wn. App. 319, 327-28, 104 P.3d 717 (2005).
[29] Jensen, 125 Wn. App. at 327.
[30] Jensen, 125 Wn. App. at 327 (alteration in original).
[31] Jensen, 125 Wn. App. at 328.

In contrast, here, sufficient evidence supports each conviction. First, a rational juror would be able to tell what crime Schneider committed from J.S.'s testimony. The State did not need evidence about details like times and places of the assaults; it was enough that J.S.'s testimony described Schneider's sex acts with her "with sufficient specificity" to allow the jury to conclude that those acts constituted "intercourse." Unlike the witness in Edwards, who only described the defendant's acts on one occasion, J.S. described Schneider penetrating her vaginally, anally, and orally, with his penis and with sex toys. This is analogous to the victim's testimony in Hayes that the defendant "'put his private part in mine.'"[32] Coupled with J.S.'s description of the usual course of conduct, that testimony satisfied the first prong.[33] Likewise, the jury could determine the nature of Schneider's acts for each count from J.S.'s testimony.

The evidence also satisfies the second prong. In Hayes, the victim testified that sexual intercourse occurred "at least 'four times' and some '[t]wo or three times a week' between July 1, 1990 and May 31, 1992."[34] J.S. gave similar testimony. She estimated Schneider raped her three times per week when she was 12 and 13, three or four times per week when she was 14 and 15, and continued after she was 16. Unlike the victim in Jensen, J.S. alleges more than

---

[32] Hayes, 81 Wn. App. at 438.
[33] Hayes, 81 Wn. App. at 438.
[34] Hayes, 81 Wn. App. at 435 (alteration in original).

two incidents of sexual contact. J.S. thus "describe[d] the number of acts committed with sufficient certainty to support each" count.[35]

The State's evidence against Schneider also satisfied the third prong. Unlike in Edwards, where the State offered testimony about one specific incident when the victim was 5 or 6 but "no evidence defining the time period in which any other act occurred,"[36] J.S. described the general time period of the sex acts: she testified that Schneider raped her three times per week when she was 12 and 13, and three or four times per week when she was 14 and 15, and continuing after she was 16.

In sum, though J.S. could only provide details about two specific incidents when Schneider raped her, she described the nature, frequency, and period of many others. Schneider argues that this generic, undifferentiated testimony was not sufficient to support his convictions. But Washington courts have affirmed multiple count sexual assault charges where the State relied on similar generic testimony.[37] J.S.'s testimony satisfied the three-part test for each of the charging periods and counts charged.

---

[35] See Hayes, 81 Wn. App. at 438.
[36] Edwards, 171 Wn. App. at 403.
[37] Hayes, 81 Wn. App. at 431.

Admission of Schneider's Alleged Prior Sexual Offenses under ER 404(b)

Schneider makes two challenges to the trial court's admission of evidence of accusations of earlier sexual offenses to show a common scheme or plan, as permitted by ER 404(b). First, he claims that the record does not support several findings of fact the trial court made to support its decision. Second, he asserts that the alleged earlier offenses lacked enough similarity to the charged offenses to show a common scheme or plan.

*The Trial Court's Findings of Fact for ER 404(b) Analysis*

We review the trial court's findings of fact to see if the record contains substantial evidence to support them.[38] Substantial evidence is evidence of sufficient quantity "to persuade a fair-minded, rational person."[39] The challenging party bears the burden of showing the absence of substantial evidence to support the finding.[40]

Before jury selection, the trial court considered the State's request to present evidence of A.S.'s accusations against Schneider. The parties agreed to the court's consideration of various interview transcripts, a police report and notes, a video recording, and an audio recording. After considering these materials, the trial judge provided a detailed oral decision explaining his decision

---

[38] In re Pers. Restraint of Davis, 152 Wn.2d 647, 679, 101 P.3d 1 (2004).
[39] Davis, 152 Wn.2d at 679.
[40] Davis, 152 Wn.2d at 680.

to admit this evidence. Over five months after the trial concluded, the State prepared and the trial judge signed findings of fact and conclusions of law for this ER 404(b) decision. We address Schneider's challenges to the written findings in order.

Finding 1 states that Schneider was charged with crimes alleged to have been committed between 2002 and 2011. In fact, the information alleged Schneider committed the crimes between 2007 and 2011. The trial court's oral decision does not describe the charging period. Schneider offers no explanation why this apparent scrivener's error has any significance.

Finding 2 states the rapes of A.S. occurred in 2001 and 2002. Schneider contends that the evidence shows that they occurred in late 2000 and 2001. The trial court's oral decision makes no reference to the year of these events. The trial court found significant that both A.S. and J.S. were prepubescent at the time of Schneider's alleged rape of each. Schneider makes no argument that the one-year difference was material to the trial court's decision or otherwise has significance.

Finding 5(b) states that A.S. and J.S. were both between the age of 11 and 13 when Schneider first sexually assaulted each. Schneider challenges this based on a 2010 interview where J.S. reported the abuse began at age 7. As the State points out, J.S. reported in a 2012 interview that she first met Schneider at

age 10. More significant, the trial court did not rely on the specific age of either child to support its decision, only that both were prepubescent. Schneider fails to show how any error about when the abuse started was material to the trial court's decision or otherwise prejudiced him.

Finding 5(c) states, "Amongst other places, the defendant sexually assaulted each victim in the bedroom he shared with his then current wife, providing him access." Schneider argues that the bedroom did not provide Schneider with access to J.S. because his earliest abuses of her occurred in vehicles, empty houses, and motel rooms. But the record shows that a number, if not many, of the rapes of J.S. occurred in Schneider's home. Thus, substantial evidence supports this finding.

In addition, the trial court's oral decision informs us about the trial court's reasoning. The bedrooms, vehicles, empty houses, and motel rooms all provided Schneider with access in a place where his victim was isolated from help or escape.

Finding 5(d) states, "The defendant sought to obtain the silence of each victim with threats." Schneider complains that J.S. did not report that Schneider threatened her in "the early years." As the State notes, the record includes statements about threats without any limitation about when they occurred. Also, the trial court's finding does not say when the threats occurred, only that

Schneider made them to each victim. Schneider does not—and the record will not permit him to—question that each victim reported threats.

Finding 5(j) states, "The defendant video taped his sexual assaults with both victims." Schneider contends that the record does not support this finding because A.S. did not report the videotape until years after the event and the State never found the videotapes. Schneider does not deny that each victim reported videotaping. The trial court believed the victims, as did the jury later. Schneider does not show that the trial court abused its discretion by finding the victims credible.

Thus, Schneider fails to show that any error in fact finding undermines the trial court's ER 404(b) decision.

*The Trial Court's Application of ER 404(b)*

ER 404(b) generally prohibits admitting evidence of other crimes "to prove the character of a person in order to show action in conformity therewith." But the rule does allow admission of this evidence for other purposes, including as proof of a common scheme or plan.[41] The proponent of this evidence has the burden of showing a proper purpose. Before admitting the evidence, a trial court must

> "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought

---

[41] ER 404(b); State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."[42]

Schneider disputes the trial court's resolution of steps 3 and 4.

A common scheme or plan exists "when an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes."[43] The evidence must show "not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations."[44] This level of similarity must be substantial,[45] though the evidence need not show a unique method of committing the offense.[46]

In State v. DeVincentis,[47] the Supreme Court held the defendant's acts bore sufficient similarities to the charged crimes because they showed "'that the defendant had devised a scheme to get to know young people through a safe channel,'" leading to "'greater familiarity occurring in his own home.'" The victims were both between 10 and 13 years old. In both cases DeVincentis walked "around his house in an unusual piece of clothing—bikini or g-string underwear"

---

[42] State v. Slocum, 183 Wn. App. 438, 448, 333 P.3d 541 (2014) (internal quotation marks omitted) (quoting State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012)).

[43] State v. Lough, 125 Wn.2d 847, 855, 889 P.2d 487 (1995).

[44] Lough, 125 Wn.2d at 860.

[45] DeVincentis, 150 Wn.2d at 20.

[46] DeVincentis, 150 Wn.2d at 20-21.

[47] 150 Wn.2d 11, 22, 74 P.3d 119 (2003).

to get his victims used to his near nudity.[48] The trial court found he "'intended by the casual wearing of almost no clothes to reduce the children's natural discomfort or negative reaction to such behavior.'"[49] With both victims, the defendant asked for a massage or gave a massage in a secluded spot, such as a bedroom, and directed or asked that clothes be taken off. And he had both victims perform the same sex act.[50] Although the previous conduct occurred 15 years before the charged acts, the trial court found these similarities showed a scheme that allowed DeVincentis to pursue his compulsion for sexual contact with prepubescent or pubescent girls.[51]

In State v. Sexsmith,[52] Division Three of this court found the following similarities sufficient to show a common scheme or plan. The defendant occupied a position of authority over both victims, who were about the same age when the abuse started. The defendant isolated each victim when he abused her. The defendant forced each victim to take nude photographs, watch pornography, and fondle him.[53]

Here, the trial court found a number of similarities between the charged crimes and the earlier abuse of A.S.:

---

[48] DeVincentis, 150 Wn.2d at 22.
[49] DeVincentis, 150 Wn.2d at 22.
[50] DeVincentis, 150 Wn.2d at 22.
[51] DeVincentis, 150 Wn.2d at 22.
[52] 138 Wn. App. 497, 157 P.3d 901 (2007).
[53] Sexsmith, 138 Wn. App. at 505.

- Both victims were prepubescent.

- Schneider had access to each victim through his significant other.

- Schneider asked each to wear high heels and lingerie.

- Schneider reassured each about no risk of pregnancy.

- Schneider threatened each.

- Each victim's pain excited Schneider.

- The sex acts were consistent.

- Schneider videotaped his sexual assaults with each victim.

These similarities parallel those found sufficient to show a common scheme or plan in DeVincentis and Sexsmith.

Schneider points to dissimilarities between the abuse of A.S. and J.S. to dispute that the similarities found by the trial court show a common scheme or plan. He contrasts how the abuse started for each. For A.S., Schneider started with "three or four individual brutal forcible rapes." For J.S., "Schneider began with her in a car, expressing loving reason for having intercourse with her." The locations of the abuse differed for the two victims. The abuse of J.S. occurred frequently over a number of years, while the abuse of A.S. only occurred sporadically. But, as our Supreme Court concluded in State v. Gresham,[54] these differences "are not so great as to dissuade a reasonable mind from finding that

---

[54] 173 Wn.2d 405, 423, 269 P.3d 207 (2012).

the instances are naturally to be explained as 'individual manifestations' of the same plan."

Though Schneider identifies some differences in the abuse of A.S. and J.S., he fails to show that the trial court abused its discretion in deciding that the abuse of each showed a common plan.

*Balancing Risk of Unfair Prejudice against Probative Value*

Schneider argues the trial court erred in concluding the risk of unfair prejudice from the prior acts evidence did not substantially outweigh that evidence's probative value.[55]

The danger of unfair prejudice from prior bad acts is "at its highest" in sexual assault cases.[56] But Washington courts also "give special consideration to the probative value of such evidence . . . , especially when corroborating evidence is not available."[57] Evidence of similar prior acts is "strongly probative" in child sex abuse cases because of

---

[55] Conclusion 4 states in part, "The probative value of the evidence of the defendant's rapes of [A.S.] is exceptionally strong because of all the commonalities between the events."

[56] State v. Saltarelli, 98 Wn.2d 358, 363, 655 P.2d 697 (1982) ("'Once the accused has been characterized as a person of abnormal bent, driven by biological inclination, it seems relatively easy to arrive at the conclusion that he must be guilty, he could not help but be otherwise.'" (quoting M.C. Slough and J. William Knightly, Other Vices, Other Crimes, 41 IOWA L. REV. 325, 333-34 (1956))); DeVincentis, 150 Wn.2d at 24.

[57] DeVincentis, 150 Wn.2d at 25.

the secrecy surrounding child sex abuse, victim vulnerability, the frequent absence of physical evidence of sexual abuse, the public opprobrium connected to such an accusation, a victim's unwillingness to testify, and a lack of confidence in a jury's ability to determine a child witness's credibility.[58]

The trial court did not abuse its discretion by finding that the risk of unfair prejudice does not substantially outweigh the probative value of the evidence of A.S.'s assault. As in DeVincentis, little corroborative evidence was available to prove Schneider raped J.S.[59] Thus, if the evidence of A.S.'s assaults showed a common scheme or plan, then it had high probative value. Although the evidence had a high risk of unfair prejudice, that risk did not "substantially outweigh" the evidence's probative value.

Completeness of the Record

Schneider also claims that the state of the record before this court denied him his constitutional rights to appeal and to due process. Since the trial court looked at only documentary, audio, and visual records to make its ER 404(b) ruling, Schneider is entitled to have this court review the same record de novo to decide if the record supports the trial court's findings.

A defendant is constitutionally entitled to a record of sufficient completeness to permit effective appellate review of the defendant's claims.[60] "In most cases, a reconstructed record will provide the defendant a record of

---

[58] State v. Kennealy, 151 Wn. App. 861, 890, 214 P.3d 200 (2009).
[59] See DeVincentis, 150 Wn.2d at 23.
[60] State v. Tilton, 149 Wn.2d 775, 781, 72 P.3d 735 (2003).

sufficient completeness for effective appellate review."[61] A record is sufficient if it allows counsel to determine what issues to raise and "'place[s] before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise.'"[62] The absence of a portion of the record does not require reversal unless the defendant can demonstrate prejudice.[63]

The trial court did not admit as evidence or have filed all the material it reviewed in connection with its ER 404(b) decision. Schneider asserts he tried to recreate the record but was unable to produce a sufficient record. He identifies as missing a video recording of the 2003 police interview with A.S. and an audio recording of defense counsel's interview with J.S. Under Schneider's interpretation, "sufficient completeness" would mean absolute completeness. He asserts that this court needs not only a transcript of the defense's interview with J.S., but the audio recording as well, and not only a transcript and audio recording of the 2003 A.S. interview, but also the video recording. Schneider asserts that without the missing video and audio recordings, he cannot review the record to determine what issues and arguments it might support and this court cannot properly evaluate A.S.'s credibility.

---

[61] Tilton, 149 Wn.2d at 785.
[62] Tilton, 149 Wn.2d at 781 (internal quotation marks omitted) (quoting State v. Jackson, 87 Wn.2d 562, 565, 554 P.2d 1347 (1976)).
[63] State v. Miller, 40 Wn. App. 483, 488, 698 P.2d 1123 (1985).

Weighing credibility is not the function of an appellate court.[64] And the content of both the recordings Schneider identifies as missing have been adequately preserved: the record contains both an audio recording and a transcript of the 2003 interview and transcripts of the defense interviews with J.S. Schneider points out that the transcript of the 2003 police interview with A.S. contains numerous notations of "unintelligible" or "no response heard." But this court also has the audio recording of that interview. The reconstructed record here is adequate for this court and Schneider to make an effective review. Schneider has shown no prejudice, and this is not one of the rare cases where an incomplete record warrants a new trial.[65]

Rights To Present a Defense and Confront Witnesses

Schneider next asserts that the trial court violated his Sixth Amendment rights to confront witnesses and present a defense by excluding evidence that J.S. reported that Elizabeth's ex-partner, John, abused her.

---

[64] State v. Bartolome, 139 Wn. App. 518, 521, 161 P.3d 471 (2007) ("[A]ppellate courts defer to trial courts, even when they rule on stipulated records in cases that turn on credibility and 'where competing documentary evidence ha[s] to be weighed and conflicts resolved.'" (second alteration in original) (quoting In re Marriage of Redout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003)))).

[65] See Tilton, 149 Wn.2d at 785.

The Sixth Amendment entitles defendants to "'a meaningful opportunity to present a complete defense.'"[66] But this does not give defendants a right to present irrelevant evidence.[67] Trial judges may exclude evidence they determine is irrelevant so long as they do not abuse their discretion.[68]

The trial court did not abuse its discretion in excluding the evidence of J.S.'s past reports of sexual abuse. And Schneider cannot circumvent proper evidentiary rulings by arguing they violate his right to present a complete defense and right of confrontation. Schneider advanced several theories of relevance for this evidence, all going to J.S.'s credibility, the key factor in this case:

1. The evidence showed J.S. had reported the same type of abuse in the past and that it had caused her mother to get rid of her lover, John, that time. Schneider argued J.S. was accusing him for the same purpose because he was about to get custody of her.

2. It showed J.S. had a basis for knowledge about sexual conduct apart from Schneider raping her.

3. It would impeach J.S.'s credibility by showing a tendency to change her story based on her mother's influence, not her actual memory.

---

[66] Holmes v. South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (internal quotation marks omitted) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)); State v. Lynch, 178 Wn.2d 487, 491, 309 P.3d 482 (2013).

[67] Jones, 168 Wn.2d at 720.

[68] State v. Perez-Valdez, 172 Wn.2d 808, 814, 265 P.3d 853 (2011).

4.    Since the State made J.S.'s credibility central in arguing for the 404(b) evidence to come in, Schneider should have a chance to combat that argument.

5.    Evidence of J.S.'s report about John provided "crucial context" for part of Torr Lindberg's testimony.[69]

We reject Schneider's arguments. The trial court carefully considered whether to admit the evidence. It considered allowing the evidence while giving the jury a limiting instruction.[70] It determined, however, that admitting the evidence would require a minitrial to determine whether the abuse occurred and how it was discovered. It found that the risk of unfair prejudice, confusion of the issues, and misleading the jury substantially outweighed the evidence's probative value. The trial court thus reached the reasonable conclusion that admitting J.S.'s reports of abuse would result in a high risk of unfair prejudice and confusing the jury, and it reasonably excluded the evidence under ER 403.

In addition, the evidence had only marginal probative value. As the State points out, J.S. would almost certainly have known that reporting Schneider raped her would prevent him from getting custody of her, whether or not she had done the same with John in the past. The record contains no indication that J.S., at 16, would not have a basis for sexual knowledge apart from Schneider

---

[69] That testimony was a note, "No abuse reported after that time."
[70] See Perez-Valdez, 172 Wn.2d at 815.

assaulting her. Showing J.S. gained that knowledge from John's abuse would have no probative value either. Schneider's theory that J.S.'s report of John's abuse showed an "ability" to change her stories based on her mother's influence, thus affecting her credibility, appears to be sheer conjecture. And neither party introduced the note in Torr Lindberg's report that Schneider asserts this evidence would provide "crucial context" for.

Because the trial court did not abuse its discretion in finding the evidence was irrelevant, it did not deprive Schneider of a "meaningful opportunity to present a complete defense" or his ability to confront witnesses.[71]

Exclusion of Evidence That J.S. Knew of A.S.'s Accusations

Annetta Spicer testified that when she asked J.S. in a 2010 interview if Schneider abused her, J.S. said "nothing had ever happened" and "she had no issues with [Schneider]."[72] Schneider's counsel then asked if J.S. was "made aware . . . of the allegation of [A.S.]." The trial court excluded Spicer's response.

Schneider argues that the trial court abused its discretion in doing so. Although Spicer told J.S. about A.S.'s allegations in 2010, the State repeatedly pointed out that J.S. and A.S. did not know each other and argued that similarities between their accounts bolstered J.S.'s credibility. Schneider

---

[71] Holmes, 547 U.S. at 324 (internal quotation marks omitted) (quoting Crane, 476 U.S. at 690); see Jones, 168 Wn.2d at 720.

[72] Spicer had no notes of the interview, which occurred four years before trial.

contends that evidence that Spicer told J.S. about A.S.'s allegations was relevant to J.S.'s basis of knowledge and, thus, her credibility. He further contends this was knowing use of false evidence or improper manipulation of material evidence in violation of the Fourteenth Amendment.

This challenge lacks merit. Schneider does not contend that Spicer knew any details of A.S.'s allegations against Schneider. Without that knowledge, the evidence is not relevant: J.S. knowing the bare fact that another woman had accused Schneider could not diminish her credibility in detailing the abuse she suffered or the probativeness of the similarities between the girls' accounts. Those similarities are what the State relied on in its closing arguments. The trial court did not abuse its discretion or violate Schneider's constitutional rights in excluding that evidence.

Schneider's claim that the State committed prosecutorial misconduct by arguing contrary to facts it knew also lacks merit. Schneider does not contend Spicer knew the details of A.S.'s allegations.[73] The record supports the State's argument that J.S. did not know the details of A.S.'s reported rapes. And Schneider cites no authority indicating a closing argument can be "false evidence." This court will not reverse for trial irregularities unless the misconduct

_____

[73] Spicer's knowledge of A.S.'s allegations appears to have come from trial exhibit 45, a petition for custody and parenting time. That exhibit is not part of the appellate record.

prejudiced the jury, denying the defendant a fair trial.[74]  No such misconduct occurred here.

Trial Court's Imposition of Costs on Schneider

The trial court assessed Schneider $887 in court costs and $600 in mandatory fines.  The trial court imposed these costs under RCW 10.01.160, which provides that the "court shall not order a defendant to pay costs unless the defendant is or will be able to pay them."[75]  Schneider suffered a major head injury while the case was pending.  The court sentenced Schneider to 280 months to life in prison.  The court later found Schneider indigent, authorizing the preparation of trial transcripts at public expense for his appeal.

When a trial court imposes costs under RCW 10.01.160, "[t]he record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay."[76]

The State makes three arguments in support of the trial court's finding. We reject each.  First, the State contends that Schneider invited any error.  The "invited error" the State points to is Schneider's claim at sentencing that Schneider was "a productive member of the community" and presentation of evidence at a bail hearing that Schneider worked throughout his adult life.

---

[74] State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).
[75] RCW 10.01.160(3).
[76] State v. Blazina, 182 Wn.2d 827, 838, 344 P.3d 680 (2015).

Defense counsel's general comments about Schneider's work history cannot reasonably be construed to "invite" a finding that Schneider had the present or future ability to pay.

Second, the State points out that Schneider did not object to the court's imposition of fees at the sentencing hearing. Division Two held this to bar such an argument on appeal in State v. Blazina.[77] But that court held the defendant could not challenge for the first time on appeal a trial court's legal financial obligations (LFOs) order that was allegedly based on unsupported findings.[78] Here, the trial court made no findings.

Third, the State contends that the record supports the trial court's finding that Schneider would be able to pay $887. It points again to defense counsel's representation that Schneider was steadily employed, along with the fact Schneider had retained counsel for an appeal, in arguing that the trial court properly concluded that Schneider had the present or future ability to pay. The record does not show that the court considered Schneider's ability to pay, as RCW 10.01.160(3) requires. We conclude that the trial court exceeded its statutory authority by imposing LFOs without "tak[ing] account of [Schneider's] financial resources . . . and the nature of the burden that payment of costs will

---

[77] 174 Wn. App. 906, 911, 301 P.3d 492 (2013), remanded, 182 Wn.2d 827, 344 P.3d 680 (2015).

[78] Blazina, 174 Wn. App. at 911.

impose."[79]  Because the trial court did not make the individualized findings RCW 10.01.160(3) requires and because the basis for its determination does not otherwise appear in the record, we remand for a resentencing hearing on this issue.

## CONCLUSION

The record sufficiently supports each conviction and each challenged evidence decision.  Schneider's other arguments lack merit.  But because the trial court did not make an individualized inquiry into Schneider's ability to pay costs, we reverse that part of his sentence imposing costs and remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Appelwick, J._            _Cox, J._

---

[79] RCW 10.01.160(3).