[No. 33580-4-I.    Division One.    April 29, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. RALPH DOYLE HAYES III, *Appellant*.

*Jeanette Brinster of Northwest Defenders Association,* for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine* and *David Thiele, Deputies,* for respondent.

Cox, J. — At issue in this case is the sufficiency of generic testimony to support the conviction of Ralph Hayes for raping his young daughter, K. The State charged Hayes with four counts of rape of a child during the period "on or about" July 1, 1990 through May 31, 1992. K. testified at trial that Hayes "put his private part in mine" some "[t]wo or three times a week" during the charging period. The State presented other evidence that was consistent with the charges. A jury convicted Hayes on all four counts. He appeals.

We conclude that (1) the evidence was sufficient to support Hayes' conviction on all four counts; (2) Hayes was

not placed in double jeopardy or deprived of his right to present a defense by the State's use of the same language in the charging document and use of different evidence for each count; (3) Hayes did not receive ineffective assistance of counsel; and (4) there was no other error. Accordingly, we affirm.

## Overview

K. was born in November 1981. She was 11 when she testified at trial in 1993.

In November 1985, K. was four when she began living with Hayes and Terri Vermaat. In May 1986, Vermaat and Hayes were married. Nine months later, Hayes left their home, but left K. in the care of Vermaat until July 1988. Hayes then assumed sole care of K., and they then lived together for a short time at the homes of various friends and relatives.

In September 1988, Hayes and K. began living with Diane and her daughter, Nicky. Hayes married Diane in September 1989. All four of them lived in an apartment on Fowler Street in Everett until May or June of 1990. They then moved to another apartment.

Sometime in 1991, Hayes and Diane separated. During the separation, Hayes and K. lived with Scott Donaldson in Everett for about three to six months. Diane and Nicky moved to Lynnwood. Hayes and Diane then got back together sometime later that year. They moved back to the Fowler Street apartments and lived there with K. and Nicky.

On June 18, 1992, authorities removed K. from the Hayes' home. That was done in connection with the charges in this case.

## Evidence at Trial

K. testified at trial that from the summer of 1990 until she was taken from Hayes' home in June 1992, Hayes

"put his private part in mine" at least four times and up to "[t]wo or three times a week." She testified that these incidents occurred when she lived alone with Hayes before he lived with Diane; when she was living on Fowler Street with Diane and Nicky; and when they lived with Donaldson. She also testified that the last time it happened was two weeks before she was taken away from Hayes on June 18, 1992.

K. also testified that when Hayes "put his private part in mine" it would last about 30 minutes, and he would get on top of her and move his "private" in and out of her. She testified that she saw something "yellowish white" come out of Hayes' "private," and that he would use paper towels kept under the bed to wipe them both off. K. testified that it hurt once and that she bled once. She testified that it would happen in Hayes' bedroom during the day, in the afternoon, and when Nicky was away.

K. testified that the first time she told anyone about these incidents was when Hayes and Diane were "split up," and she and Hayes were living with Donaldson. At that time, she told her best friend, "Leah," and Leah's mother told Diane. Diane likewise testified that K. disclosed these allegations to Leah and her. But Diane added that K. fabricated the allegations because she no longer wanted to live with Hayes.

Nicky testified that K. disclosed to her that Hayes had been touching her. But Nicky stated only that K. told her that Hayes once took her pencil and pulled her into bed.

Karen Evans, the nurse practitioner who examined K., testified that K. told her that Hayes had put his private in her private two times a week for more than a year. She also testified that the condition of K.'s hymen was consistent with this frequency of intercourse.

I

Sufficiency of the Evidence

Hayes first argues that the evidence is insufficient to

support his convictions for four counts of rape of a child because there was no testimony that four separate and distinct acts of sexual intercourse occurred within the charging period. The State responds by citing testimony regarding seven different acts of alleged sexual intercourse and K.'s "generic" testimony that it occurred at least four times and up to two or three times a week. We hold that the evidence was sufficient to support the conviction.

■ Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] The reviewing court must defer to the trier of fact to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences therefrom.[2] Thus, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.' "[3]

■ To convict a criminal defendant, a unanimous jury must conclude that the criminal act charged has been committed.[4] In cases where several acts are alleged, any one of which could constitute the crime charged, the jury must unanimously agree on the act or incident that constitutes the crime.[5] In such "multiple acts" cases, Washington law applies the "either or" rule:

> either the State [must] elect the particular criminal act upon which it will rely for conviction, or . . . the trial court [must] instruct the jury that all of them must agree that the same

---

[1]*State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990).

[2]*State v. Gerber*, 28 Wn. App. 214, 622 P.2d 888, *review denied*, 95 Wn.2d 1021 (1981).

[3]*State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

[4]*State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *modified in part by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988).

[5]*Petrich*, 101 Wn.2d at 572; *Kitchen*, 110 Wn.2d at 411.

underlying criminal act has been proven beyond a reasonable doubt.[6]

█ In sexual abuse cases where multiple counts are alleged to have occurred within the same charging period, the State need not elect particular acts associated with each count so long as the evidence "clearly delineate[s] specific and distinct incidents of sexual abuse" during the charging periods.[7] The trial court must also instruct the jury that they must be unanimous as to which act constitutes the count charged and that they are to find "separate and distinct acts" for each count when the counts are identically charged.[8]

Here, the evidence shows specific and distinct acts of sex abuse during the charging period. The trial court also complied with the requirement to properly instruct the jury.[9] Thus, our inquiry is whether the evidence was sufficiently specific as to each count charged.[10]

## A

### Specific Testimony

Our review of the record shows that at least one act of sexual intercourse between Hayes and K. occurred while

---

[6]*Kitchen*, 110 Wn.2d at 411. *See Petrich*, 101 Wn.2d at 572.

[7]*State v. Newman*, 63 Wn. App. 841, 851, 822 P.2d 308, *review denied*, 110 Wn.2d 1002 (1992).

[8]*State v. Noltie*, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991).

[9]The court instructed the jury as follows:

"A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Instruction 5.

"To convict [for each count, you must find as an element]:

"(1) That on or about the 1st day of July, 1990 through the 31st day of May, 1992, but an occasion separate and distinct from that charged in [the remaining counts], the defendant had sexual intercourse with [K.]; ". . .

" . . . For you to return a verdict of guilty all twelve jurors must agree that the same incident of sexual intercourse has been proved beyond a reasonable doubt." Instructions 6, 7, 8, and 9.

[10]*Newman*, 63 Wn. App. at 851.

they lived with Donaldson in 1991. K. testified that during this time she told Leah, her friend, that Hayes had been touching her. Diane also testified that Leah's mother called and told Diane that "she [Leah] said that K. had told her that [Hayes] had been putting his private into hers." Diane then testified that when she asked K. why she never told her, "all she [K.] would tell me is it happened the other day . . . [h]e's been doing it a lot." From this testimony, a rational trier of fact could infer that Hayes had sexual intercourse with K. at least once during this time. The reference to Hayes "doing it a lot" also implies that more than one act of intercourse occurred during that period. A rational juror could infer from this evidence that the State had proven beyond a reasonable doubt that Hayes had sexual intercourse with K. at least once in 1991 while they lived at Donaldson's house.

■ At trial, K. also testified that the last time Hayes "put his private part in mine" was two weeks before she was taken away from him. She was taken away on June 18, 1992. Thus, the last time Hayes abused her was about June 4, 1992. Hayes argues that this incident cannot be considered as proof of one of the four counts because it falls outside the charging period, which was "on or about the 1st day of July, 1990 through the 31st day of May, 1992." The State responds that the charging language "on or about . . . the 31st day of May, 1992" should be construed to include this incident. We agree with the State.

A defendant may not be convicted for a crime with which he or she was not charged.[11] But where time is not a material element of the charged crime, the language "on or about" is sufficient to admit proof of the act at any time within the statute of limitations, so long as there is no defense of alibi.[12]

---

[11]*City of Auburn v. Brooke*, 119 Wn.2d 623, 629-30, 836 P.2d 212 (1992).

[12]*State v. Osborne*, 39 Wash. 548, 81 P. 1096 (1905) (prosecution for rape where evidence at trial established that the rape occurred a week or two weeks

Here, time is not an element of the crime charged.[13] The incident on June 4 also falls well within the seven-year statute of limitation period.[14] Finally, Hayes did not rely on a true alibi defense. On the omnibus application, the State specifically requested notice of intent to rely on an alibi defense. Hayes gave no such notice, but simply indicated that he was asserting the defense of "general denial/innocence."

Nor did his defense at trial amount to an alibi defense. Rather, he attacked the credibility of K.'s testimony that he had sexual intercourse with her. He defended against the charges by presenting evidence that K. had a motive to fabricate the allegations. In short, this was a credibility contest between Hayes and K. As the court observed in *State v. Brown*:[15]

> In cases where the accused child molester virtually has unchecked access to the victim, neither alibi [n]or misidentification is likely to be a reasonable defense. The true issue is credibility.

A rational juror could infer from this evidence that the State had proven beyond a reasonable doubt that Hayes had sexual intercourse with K. at least once about June 4, 1992.

---

prior to the date alleged in the information); *State v. Oberg*, 187 Wash. 429, 432, 60 P.2d 66 (1936) (prosecution for sodomy where the State alleged that the act occurred "on or about April 3," but the victim testified that the act occurred on June 20, over two months later); *State v. Thomas*, 8 Wn.2d 573, 586, 113 P.2d 73 (1941). *See also* RCW 10.37.050(5), (7) (an information is sufficient if it indicates that the crime was committed before the information was filed and within the statute of limitation, and the crime is stated with enough certainty for the court to pronounce judgment upon conviction.)

[13]RCW 9A.44.073 (rape of a child in the first degree is established by proof that the perpetrator had sexual intercourse with a person who is less than twelve years old and not married to the perpetrator, and the perpetrator is at least twenty-four months older than the victim). *See also State v. Cozza*, 71 Wn. App. 252, 258-59, 858 P.2d 270 (1993) (noting that time is not of the essence in a charge of sexual assault).

[14]RCW 9A.04.080(1)(c) (limitation period for prosecution for rape of a child in the first degree is seven years or three years after the victim's 18th birthday).

[15]55 Wn. App. 738, 748, 780 P.2d 880 (1989), *review denied*, 114 Wn.2d 1014 (1990).

In response to defense counsel's questions at trial, K. also testified that Hayes "put his private part" in hers at least once while they were living with Nicky and her mother, Diane. K.'s recollection was that the sexual intercourse occurred while Nicky was sleeping at a friend's house. Nicky did not often sleep at the houses of friends. From this testimony, a rational juror could reasonably infer that sexual intercourse between K. and her father occurred at least once while they were living with Nicky and her mother.

The State points to other specific testimony of K. to support its arguments that more than the three incidents of rape we have discussed thus far occurred. For example, Nicky testified that K. disclosed to her that Hayes had touched her in a way she did not like. But Nicky testified that K. only told her "that [Hayes] used to help her with her homework and that he would take her pen — their pencil in bed and pull her in." Although this activity is suspicious, it is not clear to us that any rational juror would infer beyond a reasonable doubt that sexual intercourse between K. and Hayes occurred at this time. Likewise, K.'s testimony regarding the time "it hurt" and the time she "bled" fails to distinguish these incidents from those occurring at Donaldson's, Nicky's, or Hayes' about June 4, 1992.

The State also points to specific testimony of K. that Hayes had sexual intercourse with her after living with Terri but before Diane. K. lived alone with Hayes for a period of time in 1988 after she stopped living with Terri, but before Hayes and Diane were together. These incidents would have occurred approximately two years *before* the charging period, but within the seven year statute of limitation for rape of a child. We decline to reach the issue of whether such specific testimony so far outside the charging period but within the statute of limitations is sufficient to sustain a fourth count. Our state Supreme Court affirmed a conviction for rape where the defendant challenged it on the basis that the evidence at trial showed

the offense was committed one to two weeks before the beginning of the charging period in *Osborne*.[16] But we have found no case that permits such a procedure where, as here, the proof at trial shows an alleged offense some two years prior to the beginning of the charging period. Rather, we look to other evidence to determine whether the State has sustained its burden to prove all four counts.

## B

### Generic Testimony

K. testified that Hayes "put his private part in mine" at least "four times" and some "[t]wo or three times a week" between July 1, 1990 and May 31, 1992. Hayes characterizes such testimony as "generic" and asserts that under Washington case law, such testimony cannot sustain a multiple count conviction. We hold that under the facts of this case, such evidence was sufficient to support the four counts.

Multiple count sexual assault convictions have been affirmed under Washington case law notwithstanding the State's reliance on "generic" child testimony. In *Brown*, the defendant challenged the use of "generic" testimony in support of a conviction for two counts of indecent liberties and four counts of statutory rape. The victim's testimony was limited to estimates of the number of times the defendant molested her, and general descriptions of the frequency of particular acts, such as "sometimes," and "just about every day." She did not specify dates, but described in detail the defendant's usual conduct.[17]

The *Brown* court first acknowledged the problems inherent in prosecuting cases of sexual molestation against children when the perpetrator is a "resident molester."[18] Recognizing that Washington courts have approved of

[16]39 Wash. at 549.

[17]*Brown*, 55 Wn. App. at 741-42.

[18]*Brown*, 55 Wn. App. at 746-47.

such "general" testimony in the context of its admissibility, the court reiterated that " '[t]o require [the victim] to pinpoint the exact dates of oft-repeated incidents of sexual contact would be contrary to reason.' "[19] The court then cited a California decision, concluding that

> [r]endering such testimony as was given here inadequate even under a unanimity instruction would force prosecutors to make an election that the *Petrich* court described as "impractical." With the exception of those who happen to select victims with better memories or who are 1-act offenders, the most egregious child molesters effectively would be insulated from prosecution.[20]

Thus, because the testimony was specific enough, the court held that the defendant was not deprived of his due process right to present a defense.[21] Having disposed of this claim, the court found it unnecessary to address the sufficiency claim.[22] Nonetheless it felt "compelled to observe" that the use of such evidence was sufficient to support the conviction.[23]

After the *Brown* decision, the California Supreme Court approved the use of "generic" testimony in multiple count sexual abuse cases. In *People v. Jones*,[24] the California court affirmed convictions for six counts of lewd conduct committed against one child. There, the victim testified that the defendant molested him once or twice a month, recalled five different locations where he was molested, and testified that the defendant molested him eight to ten

---

[19]*Brown*, 55 Wn. App. at 747 (quoting *State v. Ferguson*, 100 Wn.2d 131, 139, 667 P.2d 68 (1983)).

[20]*Brown*, 55 Wn. App. at 749 (citing *People v. Obremski*, 207 Cal. App. 3d 1346, 255 Cal. Rptr. 715, 719 (1989)).

[21]*Brown*, 55 Wn. App. at 749.

[22]*Brown*, 55 Wn. App. at 749.

[23]*Brown*, 55 Wn. App. at 749 (citing *Osborne*, 39 Wash. at 552; *People v. Vargas*, 206 Cal. App. 3d 831, 253 Cal. Rptr. 894, 902-07 (1988), *review denied* (April 5, 1989)).

[24]51 Cal. 3d 294, 792 P.2d 643, 270 Cal. Rptr. 611, 621-22 (1990).

times in the shower or bathroom. "He also described details regarding how the molestation occurred: the defendant would orally copulate with him in bed and after showering."[25]

■ Concluding that the evidence was sufficient to sustain six counts of lewd conduct, the court reasoned that

> even generic testimony (e.g., an act of intercourse "once a month for three years") outlines a series of *specific*, albeit undifferentiated, incidents *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction.[26]

The court then determined what kind of evidence is necessary to support a conviction of multiple counts based on generic testimony.

Cautioning that "it is not a proper appellate function to reassess the credibility of the witnesses," the court noted that specifics regarding date, time, place, and circumstance are factors regarding credibility and are not necessary elements that need to be proved to sustain a conviction.[27] Rather, the court concluded, the evidence need only be specific as to the type of act committed, the number of acts committed, and the general time period.[28]

Hayes urges this court to reject the majority's reasoning in *Jones* and adopt that of the *dissent* in that case. The dissenting opinion concluded that use of such generic testimony violates the unanimous verdict requirement,[29] that it violates the right to present a defense,[30] and that

---

[25]*Jones*, 270 Cal. Rptr. at 614-15.

[26]*Jones*, 270 Cal. Rptr. at 622.

[27]*Jones*, 270 Cal. Rptr. at 623.

[28]*Jones*, 270 Cal. Rptr. at 623-24.

[29]*Jones*, 270 Cal. Rptr. at 629 (Mosk, J., dissenting).

[30]*Jones*, 270 Cal. Rptr. at 633.

such evidence is insufficient to sustain a multiple count conviction as a matter of law.[31] We decline Hayes' invitation to adopt the reasoning of the dissenting opinion. Rather, we adopt the well-reasoned analysis of the majority in that case.

To hold as a matter of law that generic testimony is always insufficient to sustain a conviction of a resident child molester risks unfairly immunizing from prosecution those offenders who subject young victims to multiple assaults. The challenge is to fairly balance the due process rights of the accused against the inability of the young accuser to give extensive details regarding multiple alleged assaults. We believe the proper balance is struck by requiring, at a minimum, three things. First, the alleged victim must describe the kind of act or acts with sufficient specificity to allow the trier of fact to determine what offense, if any, has been committed. Second, the alleged victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution. Third, the alleged victim must be able to describe the general time period in which the acts occurred. The trier of fact must determine whether the testimony of the alleged victim is credible on these basic points.[32]

Each of the three requirements first established in *Jones* applies to the case before us. K.'s testimony that Hayes "put his private part in mine" establishes the first prong of the requirement, specificity of description of the acts. Her descriptions of how he did these acts add to the specificity prong. She described Hayes' usual course of conduct in detail (it would happen in his bed, while he was on top of her, and he used paper towels to clean up) and tied the abuse to events in her life occurring at that time (when she was living with Nicky, while they were staying with Donaldson, and two weeks before authorities

---

[31]*Jones*, 270 Cal. Rptr. at 634.

[32]*Jones*, 270 Cal. Rptr. at 623.

took her away from Hayes in June 1992). Her testimony that he had intercourse with her at least "four times" and up to "two or three times a week" establishes the second prong. Her further testimony that these acts occurred during the period between 1990 and 1992 is sufficient to establish the third prong. Thus, K.'s testimony described the type of act committed, the number of acts committed, and the general time period. Her generic testimony was therefore specific enough to sustain separately each of the four counts charged.[33]

## II

### Double Jeopardy

Hayes further argues that the State's use of the same language in the charging document and the alleged same evidence for each count violates his right against double jeopardy. We disagree.

The constitutional guaranty against double jeopardy protects a defendant from a second trial for the same offense and against multiple punishments for the same offense.[34] If one crime is over before another charged crime is committed and different evidence is used to prove the second crime, then the two crimes are not the same offense. Thus, the perpetrator may be punished separately for each crime without violating double jeopardy.[35]

■ A defendant charged with multiple counts is adequately protected from any risk of double jeopardy when the evidence is sufficiently specific as to each of the acts charged.[36] The State need not elect specific acts that it will rely upon for each charge so long as the jury is instructed

---

[33]*Jones*, 270 Cal. Rptr. at 623. *See also Brown*, 55 Wn. App. at 749.

[34]*Noltie*, 116 Wn.2d at 848 (citing *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)).

[35]*Noltie*, 116 Wn.2d at 848.

[36]*Newman*, 63 Wn. App. at 851.

as to the unanimity requirement on each count[37] and different evidence is introduced to support each count.[38] No double jeopardy violation results when the information, instructions, testimony, and argument clearly demonstrate that the State was not seeking to impose multiple punishments for the same offense.[39]

Here, the information alleged that Hayes had intercourse with K. on four separate and distinct occasions, and the court properly instructed the jury as to unanimity. Moreover, there was different evidence to support each count. We conclude that the evidence is sufficiently definite and distinct as to each count. Hayes' double jeopardy claim therefore fails.

### III

### Right to Present a Defense

Hayes next argues that the State's use of generic evidence violated his right to present a meaningful alibi defense. We disagree.

First, to the extent that Hayes challenges the charges as lacking specificity, he has waived that argument on appeal. "If an information states each statutory element of a crime but is vague as to some other matter significant to the defense, a bill of particulars can correct the defect."[40] A defendant who fails to timely request a bill of particulars below is not entitled to challenge the information as vague on appeal.[41] Hayes did not request a bill of particulars or indicate to the court that the lack of specificity in the information hampered his ability to present a defense.

---

[37]*Newman*, 63 Wn. App. at 851; *Noltie*, 116 Wn.2d at 847-48.

[38]*Noltie*, 116 Wn.2d at 848.

[39]*Noltie*, 116 Wn.2d at 848. *See also Newman*, 63 Wn. App. at 851.

[40]*Noltie*, 116 Wn.2d at 843 (citing *State v. Bergeron*, 105 Wn.2d 1, 18, 711 P.2d 1000 (1985)).

[41]*Noltie*, 116 Wn.2d at 844.

■ Nor has Hayes demonstrated that he was deprived of his right to present a defense. A defendant is not deprived of his or her due process right to present a defense when a child victim's testimony fails to indicate specific dates.[42] As discussed above, Hayes' defense was not a true alibi defense, but a general denial of the charges and an attack on the credibility of K., the alleged victim. Thus, the State's reliance on the nonspecific testimony did not deprive Hayes of his right to present this defense.[43]

Even if Hayes' defense can be appropriately characterized as an alibi defense, his claim fails. A defendant has no due process right to a reasonable opportunity to raise an alibi defense in single or multiple act sexual assault charges.[44] Time is not of the essence in sexual assault charges, and it does not become an element of an offense merely because the defendant pleads an alibi defense.[45]

Moreover, K.'s inability to recall specific dates did not prevent Hayes from presenting his defense. "Indeed, the fact that the defendant has established an alibi covering some of the time periods alleged in the information could significantly undermine the victim's testimony as to the remaining counts."[46]

## IV

### Ineffective Assistance of Counsel

In a pro se supplemental brief, Hayes asserts several claims arguing that trial counsel's performance denied him a fair trial. We disagree.

---

[42]*Brown*, 55 Wn. App. at 748.

[43]*Brown*, 55 Wn. App. at 748.

[44]*Cozza*, 71 Wn. App. at 259. *But see Brown*, 55 Wn. App. at 748 n.8 (noting that "more specificity in testimony may be required when alibi or misidentification is raised as a defense").

[45]*Cozza*, 71 Wn. App. at 258-59 (citing *State v. Dunbar*, 152 Vt. 399, 566 A.2d 970 (1989); *State v. Wilcox*, 808 P.2d 1028, 1033 (Utah 1991)).

[46]*Jones*, 270 Cal. Rptr. at 626.

█ To prevail on an ineffective assistance claim, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the outcome of the proceedings.[47] The reviewing court presumes that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions.[48] Thus, the defendant has the "heavy burden" of showing that counsel's performance was deficient in light of all surrounding circumstances.[49]

Trial counsel's decision not to call the witnesses Hayes refers to in his pro se brief can be fairly characterized as legitimate trial strategy.[50] The record indicates that counsel considered evidence regarding K.'s precocious sexual knowledge, which may have been indicative of prior sexual abuse by K.'s mother. But counsel chose not to present it and agreed with the State's motion in limine to exclude such testimony. This decision was presumably tactical. Such testimony could also implicate Hayes, since K. exhibited this precocious knowledge shortly after she came to live with Hayes.

Counsel's decision not to question K. about Hayes' private parts in detail or introduce photographs of his private parts was likewise tactical. While such tactics might have served to impeach K.'s testimony, the decision not to pursue cross examination as such did not deprive Hayes of a fair trial. Counsel effectively impeached K.'s testimony through the testimony of Diane and Nicky.

Nor was Hayes deprived of a fair trial because counsel

---

[47]*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Early*, 70 Wn. App. 452, 460, 853 P.2d 964 (1993), *review denied*, 123 Wn.2d 1004 (1994).

[48]*State v. Sherwood*, 71 Wn. App. 481, 483, 860 P.2d 407 (1993), *review denied*, 123 Wn.2d 1022 (1994).

[49]*Sherwood*, 71 Wn. App. at 483.

[50]*See Sherwood*, 71 Wn. App. at 484; *State v. Shilling*, 77 Wn. App. 166, 889 P.2d 948 (trial counsel's decision regarding what witnesses to call is generally deemed a legitimate trial tactic), *review denied*, 127 Wn.2d 1006 (1995).

failed to call Leah or her mother to testify that K. lied and why she lied. Such a decision was tactical; counsel chose instead to introduce that evidence through Diane.

Hayes further argues that counsel's failure to impeach Karen Evans' testimony with an alleged new journal study amounted to ineffective assistance. First, we cannot consider this claim because there is no evidence in the record that such evidence even existed.[51] Allegations of ineffective assistance that involve matters outside the record on direct appeal can be properly reviewed only by way of a personal restraint petition, which has not been filed in this case.[52]

Second, even if the study exists, Hayes claims in his brief that it came out *after* the trial. Thus, counsel could not have possibly impeached Evans' trial testimony with it.

Hayes finally claims that K.'s testimony should be "dismissed." That is a factual challenge to the evidence, which is not within the scope of this court's review.[53] The jury considered these credibility issues below and decided adversely to Hayes. We will not disturb that determination.

We affirm the judgment and sentence.

WEBSTER and BECKER, JJ., concur.

Review denied at 130 Wn.2d 1013 (1996).

---

[51]*State v. Crane*, 116 Wn.2d 315, 335, 804 P.2d 10 (1991).

[52]*State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159, *review denied*, 117 Wn.2d 1018 (1991).

[53]*See Hernandez v. Western Farmers Ass'n*, 76 Wn.2d 422, 425, 456 P.2d 1020 (1969) ("we do not retry factual disputes where there is substantial evidence to support the jury's verdict").