## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75873-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JEREMY WAYNE EHRMANTROUT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 12, 2018 |
| | ) | |

MANN, J. — Jeremy Ehrmantrout appeals his convictions for one count of first degree child rape and three counts of first degree child molestation. The State concedes that Ehrmantrout is entitled to a new trial because his right to counsel was violated. We accept the State's concession, reverse Ehrmantrout's convictions, and remand for a new trial.

## FACTS

In July 2001, S.E. was born to Lamara Penny and Jeremy Ehrmantrout. In 2008, after her parents separated, S.E. and her younger brother lived with Ehrmantrout during the week and Penny on the weekends. This arrangement lasted until December 2013 when Ehrmantrout and Penny renegotiated their children's residential arrangement. In July 2014, S.E. told her boyfriend, B.F., that Ehrmantrout "butt raped" her. B.F. told

Penny that "Jeremy [Ehrmantrout] had done some things to [S.E.] that [she] really needed to talk to [S.E.] about." Penny confronted S.E. and S.E. told her what happened.

Ehrmantrout was charged initially on July 29, 2015, with one count of rape of a child in the first degree and one count of child molestation in the first degree. The next day, a detective had S.E. call Ehrmantrout to try to get him to "acknowledge" what happened. The detective, unbeknownst to Ehrmantrout, recorded the call. At trial, the State played a tape of the conversation and the tape was admitted into evidence.

Prior to trial, the State amended the information charging Ehrmantrout with two counts of first degree rape of a child and three counts of first degree child molestation.

At trial, S.E. testified that Ehrmantrout abused her while she was in sixth grade. At Ehrmantrout's apartment, S.E. would sleep with her little brother underneath a table in the living room. She testified that one night Ehrmantrout laid down next to her, pulled his pants and underpants down, and made her touch his "privates." S.E. also testified about two other types of abuse that happened on the apartment's couch. While on the couch, Ehrmantrout would make S.E. tickle his feet. He would tell her to move "higher" until she touched his "penis." S.E. testified that she touched his penis "[m]ore than five [times] at least" for "[a] couple nights a week" for "[a] couple months." Other times, after Ehrmantrout told S.E. to take her clothes off, he would "rub" "[h]is hand to [her] privates." S.E. did not remember exactly how many times this happened; she testified that it happened more than once but less than 10 times. One count of child rape was dismissed at the conclusion of the State's case. The jury found Ehrmantrout guilty of the remaining counts.

## ANALYSIS

### Right to Counsel

Ehrmantrout argues that his right to counsel was violated by the admission of the recorded telephone call because his Sixth Amendment right to counsel attached when charges were filed. The State concedes that Ehrmantrout's right to counsel was violated and that he is entitled to a new trial. We accept the State's concession. We reverse Ehrmantrout's convictions and remand for a new trial. Because we remand for a new trial, we do not address Ehrmantrout's arguments regarding voir dire, judicial notice, sentencing, the right to present a defense, and the appearance-of-fairness doctrine.

### Sufficiency of the Evidence

While we remand for a new trial, it is necessary to address the scope of the new trial in response to Ehrmantrout's claim that there is insufficient evidence to support three counts of child molestation. S.E.'s generic testimony about the alleged abuse, he argues, supports only one count of molestation or, at most, two. If there is insufficient evidence to support three molestation charges, then double jeopardy bars the State from retrying Ehrmantrout on any dismissed count. See Burks v. United States, 437 U.S. 1, 17, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (holding that double jeopardy bars retrial where a court has vacated a conviction due to insufficient evidence).

A defendant may be convicted only when a unanimous jury concludes that the act that the State charged in the information has been committed. State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). The State may either elect the act to rely on for a conviction or the trial court must instruct the jury that it must unanimously agree that

the State has proved the same act beyond a reasonable doubt. Kitchen, 110 Wn.2d at 409. When the State alleges that multiple counts of sexual abuse occurred within the same charging period, it need not elect particular acts for each count so long as the evidence "clearly delineates specific and distinct incidents of sexual abuse" during the charging periods. State v. Hayes, 81 Wn. App. 425, 431, 914 P.2d 788 (1996) (internal quotation marks omitted).

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could find that the act charged was committed. Hayes, 81 Wn. App. at 430. We draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. Hayes, 81 Wn. App. at 430.

Generic testimony may be sufficient to sustain a conviction for child molestation when three elements exist. The alleged victim must (1) describe the acts with "sufficient specificity to allow the trier of fact to determine what offense, if any, has been committed," (2) "describe the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution," and (3) "describe the general time period in which the acts occurred." Hayes, 81 Wn. App. at 438.

In Hayes, the court held that the victim's generic testimony sustained four counts of child molestation. 81 Wn. App. at 438-39. The victim established the first prong by testifying that Hayes "put his private part in mine," the second by testifying that this happened at least "four times" and up to "two or three times a week," the third by testifying that the acts occurred between 1990 and 1992. Hayes, 81 Wn. App. at 438-

39. The court reasoned that this generic testimony was sufficient to sustain Hayes's four convictions for child molestation. Hayes, 81 Wn. App. at 439.

In State v. Jensen, however, the court held that generic testimony did not sustain three counts of child molestation. 125 Wn. App. 319, 328, 104 P.3d 717 (2005). The victim established two counts: the first by testifying that Jensen "entered her room at night and touched her in her 'private spot'" and the second by testifying that Jensen entered her room and "touched her breast." Jensen, 125 Wn. App. at 327. The victim also testified that Jensen "touched her private area '[a] few times'" and "entered her room at night two other times," but she did not testify to any sexual contact when Jensen was in her room on these visits. Jensen, 125 Wn. App. at 327. The court held that the victim's generic testimony did not describe the third molestation offense with sufficient specificity. Jensen, 125 Wn. App. at 328.

Similarly, in State v. Edwards, the court held that generic testimony did not sustain two counts of child molestation. 171 Wn. App. 379, 403, 294 P.3d 708 (2012). Edwards's victim testified that he touched her "front private" 10 to 15 times, but she only provided details of the first incident; the "first time" Edwards touched her vagina his hand "move[d]" while touching it and "it hurt" and felt "bad." Edwards, 171 Wn. App. at 384. The victim testified that the first act occurred when she was five or six, but "[t]here was no evidence defining the time period in which any other act occurred." Edwards, 171 Wn. App. at 403. Since the victim's generic testimony did not clearly delineate between specific and distinct incidents of sexual abuse, the court held that there was insufficient evidence to support the second count of child molestation. Edwards, 171 Wn. App. at 403.

Here, the evidence is sufficient to support each count of molestation. The evidence satisfies the first Hayes element because it describes the acts with sufficient specificity. S.E. testified that (1) Ehrmantrout "rub[bed]" "the outside" of her "privates," (2) she touched Ehrmantrout's penis under the table in the living room, and (3) she touched his penis on the couch after she rubbed his feet. Similar to the victim's testimony in Hayes, and unlike the victims' testimony in Jensen or Edwards, this generic testimony delineated between specific and distinct incidents of sexual abuse.

The evidence satisfies the second Hayes element because it describes with sufficient certainty how many acts of molestation Ehrmantrout committed. S.E. testified that Ehrmantrout made her touch his penis under the table once. She testified, however, that she touched his penis after rubbing his feet much more often. This happened "[a] couple nights a week," "[m]ore than five at least," for "[a] couple months." S.E. also testified that Ehrmantrout "rub[bed]" her "privates" "more than one" time, but less than 10 times. Again, S.E.'s description of the abuse is more similar to the victim's testimony in Hayes—Hayes's victim testified that Hayes abused her at least "four times" and up to "two or three times a week"—than it is to the victim's testimony in Edwards— Edwards's victim testified that Edwards touched her "front private" 10 to 15 times but only described the details of the first incident. Hayes, 81 Wn. App. at 438-39; Edwards, 171 Wn. App. at 384.

Finally, the evidence satisfies the third Hayes element because it describes the general time period in which the abuse occurred. S.E. testified that Ehrmantrout abused her "during the school year" in "[s]ixth grade." S.E.'s testimony described the type of act committed, the number of acts committed, and the general time period in

which the acts occurred. Her generic testimony sustains each separately charged count of the three counts charged.

Reversed and remanded.

_____

WE CONCUR:

_____          _____