# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                           Respondent,<br><br>        v.<br><br>ELBER LOPEZ HERNANDEZ,<br><br>                           Appellant. | No.  49434-5-II<br><br>UNPUBLISHED OPINION |

BJORGEN, C.J. — Elber Lopez Hernandez appeals his four convictions of first degree child molestation.

Hernandez argues that the State presented insufficient evidence for the jury to convict him on four separate counts of first degree child molestation.  He maintains the generic testimony that formed the basis of counts II, III, and IV, insufficiently described three specific and distinct acts of first degree child molestation.  Accordingly, he claims, no jury could unanimously agree, beyond a reasonable doubt, that he committed three specific and distinct acts of first degree child molestation, as charged in counts II, III, and IV.  He argues, consequently, that we should vacate two of his convictions.  He also argues we should decline to impose appellate costs should the State substantially prevail.

We hold that the State presented sufficient evidence to support his four convictions of first degree child molestation.  We also decline to reach the issue of appellate costs.

Accordingly, we affirm Hernandez's convictions.

FACTS

Maria Farias married Jaime Rogel Delgado, and they had three children together, including a daughter, D.R. D.R. was born in April 2004. Their family lived in California until Farias and Delgado divorced in 2008. About a year after the divorce, Farias moved to Washington with D.R. and bought a mobile home next to her sister, Francisca Farias Mendoza; Mendoza lived with her husband, Hernandez. Hernandez or Mendoza would often watch D.R. while Farias worked.

In the summer of 2015, D.R. traveled to California to spend time with her father, Delgado. Delgado took D.R. and her siblings on a vacation to Disneyland. Delgado testified that D.R. "was acting weird." Verbatim Report of Proceedings (VRP) (June 16, 2016) at 535. He testified that "[s]he was texting a lot." VRP (June 16, 2016) at 536. He testified that while they were driving:

> [A]ll of a sudden, she'd start crying; and she'd get over it. This happened for about an hour or more. I was talking to her. And I says, "What's the matter? Is something wrong? What is it; you don't want to go to Disneyland? You want us to go back?" "No. Nothing's going on. It's okay. Let's go." But she'd keep crying, you know, and all that. So I told her, "Something is up, and you've got to tell me about it when we get to Disneyland."

VRP (June 16, 2016) at 536.

During the drive, D.R. sent Farias multiple text messages that disclosed Hernandez had touched her inappropriately. Delgado later spoke with D.R, and she told him what happened with Hernandez.

D.R. communicated to Farias via text message that she was four the first time Hernandez molested her. She explained the first incident as follows: "[H]e was fixing the car when we—when we lived in Cali in a big house, and he put me against the car and touched me, and I

2

moved. Then he just pushed me away and said, don't tell anyone."[1] VRP (June 15, 2016) at 438.

D.R. testified that the molestation began when she was four or five and ended when she was eleven. She testified that Hernandez would use "[h]is hands" and touch her "private part." VRP (June 15, 2016) at 405. She said that the term "private part" described the area "below" her belly button where she would go "[p]ee." VRP (June 15, 2016) at 405-06. She testified Hernandez would touch her both over and under her clothing. D.R. further testified as follows:

Q: When you were nine, how many times did he use his hand to touch where you pee, under your clothes?

A: Um, I can't remember.

Q: Was it more or less than one time?

A: It was more than one time.

Q: Do you know if it was more or less than two times?

A: More than two times.

Q: Do you know if it was more or less than that?

A: It was, like, a bit more than that.

Q: Okay. So a bit more than two times?

A: (Nods.)

VRP (Jun. 15, 2016) at 406.[2]

---

[1] The elements of first degree child molestation require that the act occurred in the State of Washington. Here, the State did not file charges because this alleged molestation occurred in California.

[2] It appears the State relied on the testimony that it occurred "more than twice" to form the basis for counts II, III, and IV, as it implies at least three specific and distinct acts occurred. VRP (June 22, 2016) at 987, 993.

With regard to the incidents discussed above, D.R. elaborated that "he would usually do this—he would pick me up from school and he would bring me to his house, and then he would do it . . . when his son was in the shower." VRP (June 15, 2016) at 407. She said he would do this when Farias and Mendoza were working. She testified that he would pull her pants down and take them off. D.R. testified Hernandez would touch her "on his bed[,]" in his bedroom. VRP (June 15, 2016) at 407-08.

On one distinct occasion, D.R. testified Hernandez touched her "private part" with "[h]is penis[,]" "[i]n his room[,]" "[o]n his bed[,]" "[u]nder" her clothes. VRP (June 15, 2016) at 417-18. She testified Hernandez took her clothes "[o]ff." VRP (June 15, 2016) at 419. She said his privates "directly" touched her body. VRP (June 15, 2016) at 419-20. She testified Hernandez's penis never entered her vagina, but was outside of it.[3]

In addition, D.R. testified that Hernandez made her touch him on his private part, but she could not remember any details. She also said Hernandez made her watch pornographic material of "naked girls" when she was "either eight or nine." VRP (June 15, 2016) at 438-39. D.R. testified she did not tell anyone what happened because she "was . . . scared that he would hurt me and my family." VRP (June 15, 2016) at 422. She testified "[h]e just said, if you told [sic] anyone, I will kill you." VRP (June 15, 2016) at 423.

The State charged Hernandez by amended information with four counts of first degree child molestation. In count I, the molestation was alleged to have occurred during the period between April 14, 2013 and April 13, 2014. Counts II, III, and IV were alleged to have occurred during the period between April 14, 2009 and June 27, 2015. The case went to jury trial. The State called 13 witnesses who corroborated various parts of D.R.'s testimony. The defense

---

[3] This incident formed the basis for count I.

called 2 witnesses, and Hernandez provided testimony in his defense, denying that he touched D.R. inappropriately.

The jury convicted Hernandez on all four counts. The superior court sentenced Hernandez to a standard term of confinement, entered a lifetime no contact order between him and D.R., and imposed conditions of community custody.

Hernandez appeals his convictions.

ANALYSIS

Hernandez argues that the State presented insufficient evidence for the jury to convict him on four counts of first degree child molestation. As a result, Hernandez contends that we must vacate two of his convictions. We disagree.

I. SUFFICIENCY OF THE EVIDENCE

A.     Legal Principles and Standards of Review

To convict a defendant of first degree child molestation, the jury must find, beyond a reasonable doubt, that the defendant had or knowingly caused another person under the age of eighteen to have, "sexual contact with another who is less than twelve years old and not married to the [defendant] and the [defendant] is at least thirty-six months older than the victim." RCW 9A.44.083(1). "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

Due process requires the State to prove every element of the charged crimes beyond a reasonable doubt. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

*State v. Jensen*, 125 Wn. App. 319, 325, 104 P.3d 717 (2005). In a challenge to the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Id.* Circumstantial evidence and direct evidence are equally reliable. *Id.* at 325-26.

In some child sexual abuse cases, the State alleges "several acts" each of which could constitute the crime charged. *State v. Hayes*, 81 Wn. App. 425, 430, 914 P.2d 788 (1996). However, to convict a criminal defendant of several acts, a unanimous jury must conclude that the criminal act charged has been committed. *Id.* at 430. Thus, the jury must unanimously agree on the act or incident that constitutes the crime. *Id.* We apply the *either or* rule, when a case involves several acts:

> "[E]ither the State [must] elect the particular criminal act upon which it will rely for conviction, or . . . the trial court [must] instruct the jury that all of them must agree that the same underlying criminal act has been proven beyond a reasonable doubt."

*Id.* at 430-31 (alterations in original) (footnote omitted) (quoting *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)). The State need not elect particular acts associated with each count if the evidence clearly describes specific and distinct incidents of sexual abuse during the charging periods. *Id.* at 431. Still, the trial court must instruct the jury that they must be unanimous as to which act constitutes the count charged. *Id.* In addition, the jury must find specific and distinct acts for each count when the counts are identically charged. *Id.*

B.      Generic Testimony—Counts II, III, and IV

Hernandez concedes the State presented sufficient evidence to convict him on count I. However, he maintains the testimony that formed the basis of counts II, III, and IV was generic in that it described only a usual course of conduct, rather than specific and distinct acts. As such,

6

he argues that it insufficiently described three specific and distinct acts of first degree child molestation.

Because the State did not elect particular acts associated with each count, the superior court was required to instruct the jury as to unanimity according to *Hayes*, 81 Wn. App. at 431. Jury instruction 10 stated as follows: "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." CP at 71. Jury instruction 11 stated as follows:

> The State alleges that the defendant committed acts of child molestation in the first degree on multiple occasions. To convict the defendant on any count of child molestation in the first degree, one particular act of child molestation in the first degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of child molestation in the first degree.

CP at 72. We conclude that the superior court properly instructed the jury that they must be unanimous as to which act constitutes the count charged.

We use a three-prong test to determine whether generic testimony about a course of sexual abuse sufficiently describes specific and distinct incidents of abuse in order to support a conviction. *State v. Edwards*, 171 Wn. App. 379, 402, 294 P.3d 708 (2012) (citing *Hayes*, 81 Wn. App. at 438). First, the alleged victim must describe the kind of act or acts with sufficient specificity to allow the trier of fact to determine what offense, if any, has been committed. *Hayes*, 81 Wn. App. at 438. Second, the alleged victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution. *Id.* Third, the alleged victim must be able to describe the general time period in which the acts occurred. *Id.*

As to the first prong, D.R. provided detailed testimony similar in quality to *Hayes*. In *Hayes*, the victim provided a description of the usual course of conduct and testified that the

defendant "put his private part in mine." 81 Wn. App. at 438. Division One of our court held that this description satisfied the first prong. *Id*. Here, as in *Hayes*, D.R. described a usual course of conduct rather than a specific incident. D.R. testified that Hernandez would usually do the following: pick her up from school, bring her to his house, take her into his bedroom, put her on his bed, take off her pants, and touch her with his hands, including directly on the area where she goes to "pee"; that is, her vagina. VRP (June 15, 2016) at 400-10. D.R. testified Hernandez would do this while his son showered and while her mother and aunt were at work. D.R.'s description of Hernandez's hand touching her bare vagina coupled with her description of the usual course of conduct is equivalent to the testimony provided in *Hayes*. Thus, we conclude D.R.'s testimony describes the act with sufficient specificity to satisfy the first prong.

Turning to the second prong, in *Hayes* the court held that the victim's statements that it happened at least "four times" and up to "two or three times a week" was enough to support conviction on four counts of rape of a child. 81 Wn. App. at 439. Under *Hayes*, the testimony does not need to be certain about the specific number of acts. The victim can give varying estimates and still satisfy the prong, so long as the victim's estimates support the counts charged.

In this case, the State charged Hernandez with four counts of first degree child molestation, but only counts II, III, and IV are at issue. Even though D.R. provided somewhat unclear testimony as to precisely how many times Hernandez molested her, none of her answers indicate that it happened less than three times. D.R. said he touched her private part with his hand "more than one time . . . [m]ore than two times . . . a bit more than [one or two times]." VRP (June 15, 2016) at 406. Stating that the molestation occurred "a bit more than" two times is wholly consistent with the jury unanimously finding, beyond a reasonable doubt, that it happened, at a minimum, three times. *Id*. D.R. provided sufficient testimony to support each

count because the evidence, viewed in the light most favorable to the State, indicates that Hernandez molested her with his hands three or more times. Therefore, we conclude D.R.'s testimony satisfies the second prong.

The third prong requires evidence of the general time period in which the acts occurred. In *Hayes* the State based its charging period on the victim's testimony that the acts occurred while she lived alone with the defendant, while she lived with the defendant and his girlfriend, and after she and the defendant moved out of the girlfriend's house. 81 Wn. App. at 427, 429. There, the court held that the third prong was satisfied. *Id.* at 439. On the other hand, in *Edwards* the victim testified that she was touched the first time when she was five or six, but failed to define the time period when the other 10 to 15 abusive contacts happened. 171 Wn. App. at 403. Consequently, we held that the State presented insufficient evidence to support one of the two counts. *Id.*

Similar to *Edwards*, D.R. testified that molestation began in California when she was four or five and continued after she moved to Washington until she was eleven. However, like *Hayes*, she specifically testified that Hernandez touched her bare vagina with his hands—no less than three times—when she was nine. These incidents supported counts II, III, and IV. As noted, the incident when Hernandez touched his penis to D.R.'s bare vagina supported count I. D.R. was born in April 2004, which means that she turned nine in April 2013 and turned ten in April 2014. The charging period for counts II, III, and IV was between April 14, 2009 and June 27, 2015. D.R. clearly defined when the molestation began and ended and testified to when Hernandez specifically touched her inappropriately with his hands. Further, the charging period encompasses the period that D.R. described. Accordingly, we conclude D.R.'s testimony satisfies the third prong.

Because D.R.'s testimony satisfies all three prongs, we hold that her testimony sufficiently described three specific and distinct incidents of molestation to support Hernandez's convictions on counts II, III, and IV.

## II. APPELLATE COSTS

Hernandez asks us to exercise our discretion to deny any future appellate costs the State requests. Under RAP 14.2, if the State decides to file a cost bill, Hernandez may challenge that on the basis of inability to pay. Therefore, we decline to reach this issue.

## CONCLUSION

We affirm Hernandez's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Worswick, J.

Melnick, J.