IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38154-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DANIEL STANLEY ANDRITZ, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — The State charged Daniel Andritz with one count of first degree rape of a child, occurring some time in 2012. After the alleged victim testified that the event most likely occurred in 2013, the trial court allowed the State to amend the information to change the date range. A jury found Andritz guilty as charged. On appeal, Andritz argues that the trial court abused its discretion by allowing the amendment. He also challenges certain community custody conditions imposed as part of his sentence. We conclude that regardless of error, Andritz fails to demonstrate prejudice from the late

No. 38154-4-III
*State v. Andritz*

amendment. We therefore affirm the judgment and remand to strike the community custody condition.

BACKGROUND

In 2019, when A.E.M.[1] was 14 years old, she disclosed to a friend that she had been previously raped. The friend encouraged her to tell someone. A.E.M. told her father, who reported the crime to police. During the subsequent investigation, A.E.M. told police that when she was seven or eight years old, her uncle, Daniel Andritz, had raped her. Andritz was eventually charged with rape of a child in the first degree. The information alleged that the crime occurred "[s]ometime between the 1st day of January and the 31st day of December, 31, 2012." Clerk's Papers (CP) at 58.

Andritz gave notice of a potential alibi defense at the omnibus hearing, but before trial acknowledged "to the extent that we have a time frame, there is an alibi defense . . . for all practical purposes, it's general denial." Report of Proceedings (RP) at 50.

At the time of trial, A.E.M. was 15 years old. She testified that when she was younger, she would spend every other summer with her mother, who was living with

_____

[1] To protect the privacy interests of the child victim, we use their initials throughout this opinion. Gen. Order 2012-1 of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

A.E.M.'s grandmother. Her grandmother's house included a toy room that contained toys, pantry items, and a small bed. The property was rural and different people stayed there at different times, including her mother's brother, Andritz, whom she described as living on the property in a truck camper at the time of the incident.

A.E.M. testified that she walked into the toy room and saw her younger sister on her knees with Andritz standing over her. A.E.M. remembered that her little sister was three or four years old and still in diapers at the time. She testified that her sister looked "horrified" and scared, but she could not tell why. RP at 130. A.E.M. said she yelled at her sister to go to the trampoline and that her sister ran out of the room. This made Andritz angry. A.E.M. testified that Andritz pushed her on to the bed, pulled her shorts down and his shorts down, and put his penis inside her vagina. A.E.M. was eventually able to push Andritz off her and she ran out of the room to the trampoline outside.

A.E.M. testified that she did not tell anyone what happened because she did not think they would believe her. A.E.M. said that after the rape, she would occasionally see Andritz when she was with her mother and they would stop by his house. On one such occasion, she was inside Andritz's house with her brother and cousins.

A.E.M. testified that Andritz came up behind her and pushed her into a bathroom and told her to never tell anyone. A.E.M. took this to mean that she should not tell

3

anyone about the rape.

While describing when the rape occurred, A.E.M. testified that the rape happened in May when she was seven, one month before she turned eight years old. Since she was born in June 2005, she agreed this meant the rape occurred in 2013.

The State called two other witnesses, both of them law enforcement involved in the investigation. Deputy Michael Blake investigated the grandmother's home, attempted to contact the grandmother, and prepared a report to the prosecutor's office. On cross-examination, he agreed that the rape likely occurred in 2013.

After its final witness but before formally resting, the State moved to amend the information to change the date range to June 2012 to June 2013 based on the testimony of witnesses. Andritz objected, arguing that he had asserted an alibi defense and his witnesses would address the dates set forth in the information. The court reserved on the motion and the defense agreed that the State could rest subject to the court's ruling. The State then rested.

When the trial court revisited the motion to amend, Andritz argued that he was raising an alibi defense and was prejudiced in his investigation because it was premised on the date ranges specified in the information. He also noted that changing the date would put it outside the time frame where his intended witnesses would have

4

concentrated. One defense witness whose testimony was no longer relevant was not called. The court again took the matter under advisement to hear Andritz's testimony and determine if he was raising a genuine alibi defense.

Andritz called several witnesses in his defense. His former girlfriend, Jamie Forsythe, testified that she was in a relationship with Andritz for five years and began living with him in November 2012. She testified that Andritz stayed home while she worked and did not drive. Forsythe testified that she and Andritz may have gone to his mother's home one time in 2013 to pick up a trailer. She denied that Andritz interacted with any children during this visit. She also denied that A.E.M. or her mother ever came by her home.

Andritz also called his sister, Trinity Towne, and his mother, Lina Hallock. Towne testified that she was living with her mother (A.E.M.'s grandmother) during the relevant period in time. She testified that during the years 2012 to 2013 she was pregnant and home most of the time. She did not recall her brother, Andritz, visiting their mother's home in 2012 or 2013. She described a kid's room in the home where the toys were kept that was also her son's room. She testified that A.E.M.'s younger sister was potty trained by the time she was two years old.

5

Lina Hallock, Andritz's mother and A.E.M.'s grandmother, testified that in 2012 several people were living with her including, her two daughters, Trinity and Laura Sue (A.E.M.'s mother), and A.E.M.'s younger sister, E. No one else lived at the home except Laura's husband, who would come home on weekends. Hallock testified that in February 2013, Trinity gave birth to A.E.M.'s cousin, and they turned a room into a nursery by removing a bed and replacing it with a crib. Otherwise, she testified that there was no designated toy room. Contrary to A.E.M.'s testimony, Hallock testified that A.E.M.'s younger sister, E., was potty trained and out of diapers by the time she was two years old.

Hallock also testified that Andritz stored a trailer on her property and may have stayed in it a couple of times but did not remember when that occurred. She was adamant that the children were never alone with Andritz.

Andritz testified and denied ever being alone with A.E.M. or seeing her around unsupervised. Andritz testified that he lived with Forsythe in 2013. He testified that he went to his mother's home one time in 2013 with Forsythe and another friend to tow a trailer off the property. During this visit, he did not go inside the home.

Following Andritz's testimony, the trial court granted the State's motion to amend the information and change the date range. The court observed that Andritz was able to offer evidence related to his alibi, so he was not prejudiced. The State filed a second

6

amended information, alleging that the crime occurred "[s]ometime between . . . June 12, 2012, and June 12, 2013." CP at 137.

The jury found Andritz guilty as charged, and the trial court imposed a mid-range indeterminate sentence of 108 months to life. It also imposed a condition of community custody requiring Andritz to "pay for all counseling services/therapy costs incurred by his/her victim and members of his/her immediate family as a direct result of his/her assault upon him/her," but did not impose any counseling costs as restitution. CP at 218. Andritz timely appeals.

ANALYSIS

The primary issue on appeal is whether the trial court abused its discretion by allowing the State to amend the information and change the date range of the incident at the end of the State's presentation of evidence. Andritz argues the amendment prejudiced his rights because he was raising an alibi defense and the change in date range undermined his ability to prepare a defense. A trial court's decision to grant an amendment under CrR 2.1 is reviewed for abuse of judicial discretion. *State v. Brooks*, 195 Wn.2d 91, 96-97, 455 P.3d 1151 (2020).

The parties agree that in order to prevail, Andritz must demonstrate that he was prejudiced by the amendment. Under CrR 2.1(d), the State may amend the information at

7

any time before the verdict so long as the substantial rights of the defendant are not

prejudiced. Amending a criminal charge after the State has rested its case in chief is per

se prejudicial. *Brooks*, 195 Wn.2d at 98 (citing *State v. Pelkey*, 109 Wn.2d 484, 745 P.2d

854 (1987)). The *Pelkey* rule applies when the State amends the information to charge a

new offense. *Brooks*, 195 Wn.2d at 98. Changing the date range in an information does

not change the substantive charges. *Id*. at 98-99 (citing *State v. DeBolt*, 61 Wn. App. 58,

61-62, 808 P.2d 794 (1991)). "'Where the *Pelkey* rule does not apply, the defendant has

the burden of demonstrating prejudice under CrR 2.1(d).'" *Id*. at 98 (quoting *State v.*

*Ziegler*, 138 Wn. App. 804, 809, 158 P.3d 647 (2007)).

In *Brooks*, the defendant was charged with child molestation and rape. After the

State rested, the defendant testified and admitted molesting the victim on a different date

than what was indicated in the information. After the defense rested, but before the jury

was instructed, the court granted the State's motion to amend the information and expand

the date range.

The Supreme Court affirmed, finding that the amendment did not change the

substantive offense because the dates of the alleged crime are not a material element.

*Brooks*, 195 Wn.2d at 98-99. Because the substantive criminal charge was not affected

by the amended information, the *Pelkey* rule did not apply and the defendant bore the

burden of establishing prejudice. *Id.* at 98. In *Brooks*, the defendant failed to meet this

burden. The court noted that the information originally charged that the crime occurred

"'on or about or between'" January 1, 2014, and January 31, 2014. *Id.* at 100. The "'on

or about'" language put the defendant on notice that the charge was not limited to a

specific date. *Id.* "'[W]here time is not a material element of the charged crime, the

language 'on or about' is sufficient to admit proof of the act at any time within the statute

of limitations, so long as there is no defense of alibi.'" *Id.* (quoting *State v. Hayes*, 81

Wn. App. 425, 432, 914 P.2d 788 (1996)).

Andritz contends that *Brooks* is distinguishable and does not apply. Without

deciding whether the original information put Andritz on notice that the charge was not

limited to a specific date, or whether Andritz was raising a true alibi defense, we conclude

that Andritz has failed to meet his burden of showing prejudice. All of Andritz's

witnesses testified that he did not live on the property in either 2012 or 2013. His former

girlfriend's testimony became more relevant under the amendment because she was not

dating Andritz in the summer of 2012, but was living with him since November of 2012.

Andritz's sister, Towne, lived on the property in 2012 and 2013 and testified that Andritz

did not live there or visit during either of those years. Andritz's mother testified that he

may have stayed on the property in his camper but could not recall when that may have

occurred and was adamant that he was never alone with A.E.M.

When faced with the prospect of an amended time frame, Andritz did not ask for a recess to locate additional witnesses or evidence. Nor did he file a motion for a new trial before sentencing based on newly discovered evidence. On appeal, Andritz does not identify any other witnesses or evidence that he would have presented had he known that the date range in the information would change. Because Andritz does not show prejudice, we conclude that the trial court did not abuse its discretion in allowing the State to amend the information and change the date range after the presentation of its witnesses.

Andritz also challenges the condition of community custody requiring him to pay A.E.M.'s counseling costs because the court did not impose any counseling costs as restitution. The State concedes that A.E.M.'s counseling costs were improperly imposed. When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within 180 days. RCW 9.94A.753(1). No such hearing was held in this case. We accept the State's concession and remand to strike the community custody condition that Andritz pay for A.E.M.'s counseling costs.

Affirm judgment, remand to strike condition.

10

No. 38154-4-III
*State v. Andritz*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____         _____
Lawrence-Berrey, A.C.J.                                    Fearing, J.

11